**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Daniel P. VINCENT,**
**Defendant-Appellant.**

**Nos. 80–3568, 80–3868.**

United States Court of Appeals,
Fifth Circuit.
Unit A

June 25, 1981.

Arthur A. Lemann, III, New Orleans, La., for defendant-appellant.

Robert J. Boitmann, Morris W. Reed, Michael Schatzow, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before SKELTON \*, Senior Judge and RUBIN and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Daniel P. Vincent was convicted by a jury of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and acquitted of twelve counts of substantive theft offenses and two counts of perjury. He now appeals the conspiracy conviction, complaining of five errors committed by the district court: (1) insufficiency of the evidence to sustain the conviction; (2) improper jury coercion through the *Allen* charge; (3) failure to instruct the jury of a lesser included offense; (4) restriction of defense counsel's jury argument; and (5) refusal to admit certain evidence. We affirm the action taken by the district court in all respects.

### Sufficiency of the Evidence

■ In reviewing the sufficiency of evidence to support Vincent's conspiracy conviction, we must view the evidence in the light most favorable to the government, and determine whether reasonable minds could conclude that the evidence is consistent with any reasonable hypothesis of Vincent's innocence. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Suarez*, 608 F.2d 584 (5th Cir. 1979). After a thorough review of the record, we find that Vincent's conspiracy conviction was supported by the evidence.

Dan Vincent was the executive director of Total Community Action, Inc. ("TCA") from 1969 to 1978. TCA is a local community action agency that receives government funds and administers various poverty programs in New Orleans. Vincent was also president of the Economic Development Unit ("EDU"), a private non-profit corporation established in 1976 with TCA funds. The EDU was approved by the Community Services Administration ("CSA"), the federal agency from which TCA received its basic funding. The EDU was to use TCA funds in those free enter-

prise endeavors, such as capital investments, in which TCA was prohibited from participating by federal regulations. The initial EDU project was the purchase of a building, which it then leased to TCA at a substantial savings in rent costs.

In 1975, TCA awarded M&M Janitorial Services ("M&M") the janitorial contract for the building that TCA then occupied. The "president" of M&M was Warren Washington, a friend of Vincent's, whose only role in the corporation was to circumvent government regulations against conflicts of interest. Arthur Morgan and Spencer Washington, both TCA employees, actually operated M&M. There was evidence that M&M funds were used to pay for furniture bought for Vincent's office, to make a $507.36 payment on a loan owed by Vincent's father, to purchase an automobile for Vincent's "lady friend's" use, and to make a $3,750.00 cash payment to Vincent himself.

There was also evidence of the misapplication of EDU funds. EDU funds were used to install a fireplace in Vincent's office at the EDU building. Also, $40,000 of EDU funds provided by a CSA grant was deposited into the TCA credit union. From these funds, loans were made to various TCA employees to purchase cars, including a loan back to EDU to purchase a Lincoln Versailles for Dan Vincent's use. EDU funds were also used to make a $10,000 loan to Foliage, Inc., and a $15,000 loan to A&E Auto Sales, without prior CSA approval. Much of the proceeds of these loans were used to pay off earlier bank loans personally guaranteed by Vincent.

Spencer Washington, formerly the manager of the TCA purchasing department, incorporated WASCO, Inc. as a wholesale supplier of virtually anything TCA and EDU might need. EDU was an incorporator of WASCO and was an intended shareholder, although no shares were ever issued.

WASCO received the janitorial contract formerly held by M&M (M&M ceased to exist and its remaining assets were trans-

---

\* Senior Judge of the United States Court of Claims, sitting by designation.

ferred to WASCO), plus a management services contract for all EDU property. WASCO received a $10,000 advance from EDU on the contracts and also used EDU office space without charge. WASCO purchased a building, which housed one of TCA's projects, with a loan personally guaranteed by Vincent and increased TCA's rent by $200.00 a month.

Perhaps the most flagrant of the WASCO transactions was the purchase of office supplies. TCA employees would order office supplies from the regular suppliers in the name of TCA. A requisition form would be drawn up naming WASCO as the vendor, however, at a price usually ten percent higher than that of the original supplier. TCA would pay WASCO the inflated price and WASCO would pay the original supplier, pocketing the ten percent mark-up. Each of these purchase orders was approved by Vincent's office. The total amount of mark-up received by WASCO in these transactions was $2,487.23.

There was also evidence of unauthorized use of TCA employees during regular working hours.

From the evidence presented at trial and briefly outlined above, the jury could reasonably conclude that Dan Vincent actively participated in a conspiracy with Spencer Washington, Arthur Morgan and others to defraud the United States.

### The *Allen* Charge

Following a month-long trial and almost two days of deliberations and sequestration, the jury sent the court a note, which read,
"There are some counts that the jury cannot come to a unanimous decision on. We have gone over the counts numerous times to no avail."
After receiving the note, the court decided, over defendant's objection, to give the jury the *Allen* charge. The charge given was identical to the one approved by this court in *United States v. Fossler*, 597 F.2d 478, 483–84 n.6 (5th Cir. 1979).

◼ Vincent does not complain of the wording of the charge, but argues that, under the circumstances, the charge was unduly coercive. Vincent calls to our attention the fact, which appears on the record, that one juror was seen weeping after the charge was given. He also refers to the affidavits of Vincent and his mother-in-law relating their post-verdict conversations with a juror. The juror allegedly told them that she and other jurors believed Vincent to be innocent, but felt pressured to acquiesce in the verdict by the *Allen* charge. The trial judge interviewed the juror *in camera*, and after satisfying himself that no external factors influenced the jury's verdict, refused to grant Vincent's motion for a hearing on the issue.

This court has found the *Allen* charge not to be unduly coercive in a situation very similar to this one. In *United States v. Zicree*, 605 F.2d 1381, 1390 (5th Cir. 1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980), after an eight week trial and two and a half days of deliberation, the jury reported that they had reached a verdict as to all defendants on some counts, but had reached no verdict on about one-half of the 189 counts of the indictment. The trial judge gave the *Allen* charge, which this court approved. Thus, Vincent's argument that it is inappropriate to give the *Allen* charge to a jury that has shown an ability to reach unanimity, although not as to all counts, must fail.

Vincent's argument that the trial judge erred in failing to hold a hearing on the issue of the *Allen* charge's coercive effect on the jury's deliberations must also fail.

◼ Clearly, the mental processes of the jury in its deliberations are not subject to judicial scrutiny. *United States v. Duzac*, 622 F.2d 911, 913–14 (5th Cir. 1980); *United States v. D'Angelo*, 598 F.2d 1002, 1004 (5th Cir. 1979). Fed.R.Evid. 606(b) forbids a juror from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or another juror's mind or emotions as influencing him to assent or dissent from the verdict ... or concerning his mental processes in connection therewith." The rule does permit a juror to

"testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."

■ The trial judge here questioned the juror about any *external* influences upon the jury's verdict and properly refused to question her about the mental processes involved in the jury's deliberations. Neither the post-verdict interview with the juror, nor the juror's demonstrations of emotion at the time of the *Allen* charge provided the judge with any basis to believe that the jury had been influenced by external factors. He did not abuse his discretion in refusing to hold an evidentiary hearing on the issue, as the only questions that would have been asked would have concerned the juror's internal mental processes in reaching the verdict. *See Duzac*, 622 F.2d at 914.

After considering all the objective manifestations of any possible coercive effect of the *Allen* charge which appear on the record—the weeping juror, the jury sequestration, and the *in camera* interview—we believe that there is insufficient evidence to find that the *Allen* charge given here would have been overly coercive to a reasonable jury. The trial judge did not abuse his discretion in giving this charge, and its use did not deprive Vincent of a fair trial and unanimous verdict based on proof beyond a reasonable doubt. *United States v. Bright*, 588 F.2d 504, 511 (5th Cir. 1979).

*The Lesser Included Offense Instruction*

Vincent also attacks the instructions given to the jury on the conspiracy count. He contends that the indictment charges a conspiracy to commit eleven felony offenses and two misdemeanor offenses, although the instructions failed to distinguish between the two. Therefore, Vincent claims that the jury's general verdict of guilty to Count 1 is ambiguous as to whether the jury found Vincent guilty of conspiracy to commit a felony or a misdemeanor offense, although he was sentenced in accordance with a felony offense.

■ "There is no doubt but that the defendant is entitled to an instruction about a lesser included offense as a matter of right." 2 C. Wright, Federal Practice and Procedure: Criminal § 498, 337 (1969). But if a request for such instruction is not made, as is the situation here, an appellate court should not overturn the conviction unless "plain error" is present. Fed.R. Crim.P. 52(b). In denying an application for habeas corpus relief, this court has held that the failure of the trial judge to instruct the jury on a lesser included offense when there was no request for such an instruction, was not "a clear denial of due process so as to render the trial fundamentally unfair." *Higgins v. Wainwright*, 424 F.2d 177, 178 (5th Cir. 1970).

In *Williams v. United States*, 238 F.2d 215 (5th Cir. 1956), a panel of this court, faced with a similar situation, found that the failure of the trial judge to instruct the jury as to the lesser included offense of misdemeanor conspiracy without a request for such an instruction did not constitute "clear and prejudicial error." Therefore, a reversal was not necessary to "correct manifest injustice." 238 F.2d at 219. Judge Tuttle did indicate that he might consider a grant of new trial as appropriate relief had the appellant requested it. 238 F.2d at 220. Here Vincent does request a new trial. We feel, however, that such relief is not warranted under the circumstances of this case.

■ A misdemeanor charge is appropriate under the general theft of public money statute, 18 U.S.C. § 641, only when the value of the stolen property is less than $100. A felony charge is appropriate if the value of the stolen property is greater than $100. After a thorough review of the record, we have found nothing that would justify the jury finding Vincent guilty of conspiracy to commit a misdemeanor. There was no evidence of an agreement to steal or misapply a sum less than $100. Although a particular WASCO supply transaction may have involved a sum of less than $100, the conspiracy involved all of the incidences, which together involved an amount of almost $2,500. We, therefore,

refuse to grant Vincent's request for a new trial.

### Defense Counsel's Jury Argument

 We also refuse to reverse Vincent's conviction by reason of the trial judge's curtailment of defense counsel's jury argument. Defense counsel argued that an inference of reasonable doubt could be drawn from the government's failure to call Bill White as a witness. After objection by the government, the court admonished defense counsel that if this argument continued, he would allow the government to explain that White was not called because he was being tried for offenses growing out of the same affair and had previously invoked his Fifth Amendment privilege. Vincent now claims that by its action, the court refused to allow his attorney to argue that the jury could find reasonable doubt from the lack of evidence created by White's absence. The argument is meritless, however, as the jury was sufficiently instructed that Vincent was entitled to such an inference. At the time of the government's objection to the defense attorney's argument, the trial judge carefully informed the jury that the government had the ultimate burden of proof. He told the jury that the witness could have been called by either side, but that the defendant was not obliged to call any witness, as he could rely on his presumption of innocence should he choose to do so. Generally, no unfavorable presumption may be drawn from the failure to call a witness that is equally available to both sides. *Beale v. United States*, 263 F.2d 215, 216 (5th Cir. 1959). *See United States v. Palmere*, 578 F.2d 105, 107 (5th Cir. 1978). We find no abuse of discretion in the trial court's actions.

### Introduction of Evidence

Vincent also claims that the trial court erred in refusing to admit into evidence audit reports of outside auditors examining the finances of TCA during the years 1975, 1976, and 1977. Vincent claims that he relied on these reports in administering TCA and, therefore, they are probative of the issue of his specific intent to misapply the CSA funds administered by TCA.

 The trial judge has broad discretion as to relevance and materiality of evidence, and his rulings regarding such will not be disturbed on appeal absent a clear showing of an abuse of discretion. *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978). Moreover, evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant. *Id.*

 Here Vincent failed to introduce evidence that would relate these audits to the subject matter of the indictment. In the absence of such foundation testimony, we find that the trial judge did not abuse his discretion in refusing to admit the audit reports into evidence.

The judgment of the district court is AFFIRMED.