UNITED STATES of America, Appellee,

v.

Stephan Gerald KOONCE, Appellant.

No. 88–5361.

United States Court of Appeals,
Eighth Circuit.

Submitted May 9, 1989.
Decided Aug. 29, 1989.

Paul D. Stickney, Sioux Falls, S.D., for appellant.

John Ulrich, Sioux Falls, S.D., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

LAY, Chief Judge.

Stephan Gerald Koonce (Koonce) was convicted on one count of unlawfully, knowingly, and intentionally distributing or causing to be distributed or attempting to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982). He was sentenced to twenty years' imprisonment with five years' supervised release and fined $50,000. This appeal followed.

Koonce appeals on several grounds: (1) there was insufficient evidence to sustain the guilty verdict; (2) the jury instructions regarding attempt were in error; (3) evidence of prior bad acts was erroneously admitted; (4) the Federal Sentencing Guidelines (Guidelines), 18 U.S.C. § 3551,

*et seq.*, are unconstitutional; and (5) the Guidelines were improperly applied.

Facts

In the late 1980's, the Minnesota Bureau of Criminal Apprehension conducted an investigation of methamphetamine trafficking in that state. As a result of this investigation, Darryl Petschen was prosecuted and pled guilty to charges of illegally distributing methamphetamine. In November of 1987, Petschen agreed to identify his methamphetamine supplier. Petschen named Stephan Gerald Koonce as the supplier and agreed to arrange a methamphetamine purchase from Koonce. As a part of the set-up, Petschen made a series of tape-recorded phone calls to Koonce at his residence in Monticello, Utah. During the calls, Petschen asked Koonce to mail methamphetamine to him. Petschen also sent a letter to Koonce requesting that two pounds of methamphetamine be mailed to a designated post office box address in Sioux Falls, South Dakota, and that it be addressed to a "D.P. Olsen." In reality, the box had been rented by Duane Dahl, an agent for the South Dakota Division of Criminal Investigation.[1]

A package of methamphetamine arrived[2] at the Sioux Falls post office box as previously arranged, on February 4, 1988. The package was picked up by Dahl. The analysis of the package's contents revealed that it contained approximately one pound of D–methamphetamine. Koonce's fingerprints were found on the outer wrappings of the package.

Following the package's arrival, law enforcement officials obtained a search warrant for Koonce's Utah residence. On February 12, 1988, the search warrant was executed. An additional 963 grams of methamphetamine were found during the search. Petschen's letter to Koonce was also discovered in Koonce's briefcase and a large number of firearms was found.

Discussion

 We find no merit to the substantive challenges to Koonce's conviction. First, regarding the sufficiency of the evidence necessary to sustain Koonce's conviction, we must view the evidence in the light most favorable to the verdict, accepting all reasonable inferences that logically arise. *See United States v. Matlock*, 773 F.2d 227, 229 (8th Cir.1985) (citing *United States v. Grego*, 724 F.2d 701, 704 (8th Cir.1984)). Some of the evidence supporting the inferences of guilt includes: Koonce's fingerprint found on the Sioux Falls methamphetamine package, the multiple tape recordings referring to prior and pending drug deals between the two, Petschen's letter requesting Koonce to send methamphetamine to him under the name D.P. Olsen at the particular Sioux Falls post office box, and the fact that the package *was* sent to the name at that address. Further, the Government corroborated many of Petschen's statements, and thus, the jury was entitled to credit Petschen's testimony. We find that despite the fact that no one actually observed Koonce mailing the package, there was sufficient circumstantial evidence to sustain the conviction. Second, taking the jury instructions as a whole, we find that no prejudicial error resulted. *See United States v. Varner*, 748 F.2d 925, 927 (4th Cir.1984). Third, under Federal Rule of Evidence 404(b) evidence of other bad acts is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, [or] identity, * * *." As the challenged evidence (the 963 grams of methamphetamine seized at Koonce's Utah residence) arguably concerned knowledge, intent and identity, we thus cannot say that in admitting this evidence, the trial court abused its broad discretion. *See United States v. Lanier*, 838 F.2d 281, 285 (8th Cir.1988).

 Koonce also raises two challenges to the Federal Sentencing Guidelines, 18

---

**1.** The tape-recorded phone calls occurred over a two month period of time. Petschen made the calls from the Washington County Sheriff's office in Stillwater, Minnesota.

**2.** The package had been mailed from Cortez, Colorado, a town approximately 40 miles from Koonce's Utah home.

U.S.C. § 3551, *et seq.* Koonce's constitutional objections have been foreclosed by the Supreme Court's ruling in *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Koonce also asserts that the district court misapplied the Guidelines in determining his ultimate sentence. We deal seriatim with his objections.

> The Guidelines provide:
> [t]he conduct that is relevant to determining the applicable guideline range includes * * * all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, *or that otherwise were in furtherance* of that offense.

Guideline § 1B1.3(a)(1) (emphasis added). The Guidelines § 1B1.3(a)(2) also states that: "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" shall be considered as conduct "relevant to determining the applicable guideline range[.]" In determining the base offense level, the district court found that the methamphetamine weight should include (1) that found in the package mailed to Sioux Falls (443 grams); (2) that seized in the search of Koonce's Utah home (963 grams); and (3) a portion of the total weight[3] of methamphetamine which Petschen testified he had received from Koonce during the year prior to Koonce's arrest (6,463 grams). The court considered the methamphetamine seized in Utah and a portion of that testified about by Petschen because it found "that the distribution of methamphetamine by Mr. Koonce was satisfactorily established by a preponderance

of the evidence to be a continuing enterprise with Mr. Petschen." There was evidence that Petschen's information had been corroborated and that he was considered by law enforcement officials to be reliable. Furthermore, Petschen's letter to Koonce (which was found in Koonce's briefcase during the execution of the search warrant) referred to a continuing enterprise between the two and to specific amounts of methamphetamine previously sold by Koonce to Petschen. We therefore find that the district court's calculation of the total weight of methamphetamine as 7,869 grams was not clearly erroneous. Accordingly, we affirm as to this finding.

■ Before the district court could calculate the base offense level, however, it was necessary to make a factual finding as to whether the methamphetamine was "Methamphetamine" (D— or Dextro–methamphetamine) or "L–Methamphetamine/Levomethamphetamine."[4] Here, the Drug Enforcement Agency (DEA) chemist had analyzed the methamphetamine in the Sioux Falls parcel as Dextro-methamphetamine. The laboratory analysis of the drugs seized at Koonce's Utah residence revealed that the substance was "methamphetamine." However, it was never tested further (than the generic "methamphetamine" identification) as either Dextro– or Levo–. However, the methamphetamine involved in the previous Koonce–Petschen dealings (that which was referred to in the letter) was *never* tested. Nonetheless, there was testimony that the house search occurred just several days after the package had been mailed to Sioux Falls. This fact strengthens the inference that the methamphetamine may have all been originally part of the same parcel. Further, there was evidence, albeit hearsay, that a DEA chemist had told a Minnesota drug agent that he had never seen L–methamphetmine except

3. Petschen had stated that approximately 20–30 pounds of methamphetamine had been dealt to him by Koonce.

4. Sentencing Guideline § 2D1.1(a)(3) directs the sentencer to calculate the base offense level using the Drug Quantity Table, which is found within § 2D1.1. Using the Drug Equivalency Table within § 2D1.1, one gram of [Dextro–]

Methamphetamine is equivalent to two grams of cocaine, where one gram of Levo-methamphetamine is equivalent to two-tenths of one gram of cocaine. The final sentence imposed therefore varies greatly depending upon the determination of the methamphetamine as levo– or dextro-methamphetamine.

in pharmaceutical cases. Sentencing transcript at 39. The trial court found that it was more likely that the methamphetamine was "methamphetamine" (or the Dextrotype).[5] The drug equivalency tables of section 2D1.1 require the government to prove only that the drug was an illegal substance, namely, methamphetamine. The defendant did not raise the issue at trial;[6] it did so only at the sentencing hearing. We find that the government adequately carried its burden of proof that the illegal substance was that which is the commonly understood term and not a lesser derivative of the same. Cf. United States v. Francesco, 725 F.2d 817, 821 (1st Cir.1984) ("Although the government has the burden in a criminal case of proving every element of the offense charged, it has no burden of proving that a term used in its commonly understood sense has no other possible meaning—at least until the possibility of another meaning is raised by the defense."). The defense had ample opportunity to impeach the adequacy of that finding. Under the circumstances we find the district court's finding was not clearly erroneous.

On the basis of the total amount of [Dextro-] methamphetamine, the court calculated Koonce's base offense level as 36.[7]

█ Koonce's final challenge to his sentence concerns the court's two-level enhancement for possession of a firearm. Guideline § 2D1.1(b)(1) states: "If a firearm or other dangerous weapon was possessed during commission of the offense, increase by 2 levels." The Application Notes provide further guidance:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

Guidelines § 2D1.1 Application Note 3. We also reiterate that whether or not a gun was "present" (in the sense that it justified enhancement) is a factual determination. As such, we must affirm the district court if its finding is not clearly erroneous. Other courts have addressed this issue. In United States v. Otero, 868 F.2d 1412 (5th Cir.1989) enhancement for use or possession of a firearm was upheld. In that case, the defendant negotiated and completed a cocaine sale to an undercover agent. The sale occurred in the defendant's hotel room, where additional cocaine was found. Firearms were also found in the defendant's van. There, the court of appeals upheld "the court's factual conclusion that Otero constructively possessed a weapon during the commission of the offense [as it was] not clearly erroneous." Id. at 1415. Cf. United States v. Hewin, 877 F.2d 3 (5th Cir.1989); United States v. White, 875 F.2d

---

5. We think that the case at bar is not entirely unlike that in United States v. Brett, 872 F.2d 1365 (8th Cir.), petition for cert. filed, (June 23, 1989) (No. 88–7566). In that case, this court found that although only six of 82 packets were chemically analyzed, the court's inference that all of the drugs contained the same substance, was permissible. Id. at 1372. In the instant case, the evidence presented supported an inference of a close nexus between the methamphetamine found at Koonce's Utah home and that in the Sioux Falls parcel. This further supports the district court's finding that all of the methamphetamine was of the Dextro-type.

6. The defense elicited from the chemist that the Utah methamphetamine had not been tested further as to Dextro- or Levo-, but did not introduce any evidence to indicate that it was Levo-.

7. See Sentencing Transcript at 56. The trial court may have misspoken and meant 34. According to the Drug Equivalency Tables in the Guidelines, the 7869 grams (total gram weight of the involved drugs as found by the trial court) is equivalent to the 15.738 kilograms of cocaine. Using this amount, the Drug Quantity Table indicates that a base offense level of 34 is appropriate. Although the court stated it was imposing a base offense level of 36, after it had announced it was assessing an additional two levels for possession of a firearm, the court stated that 36 was the proper offense level. We find that 34 was the proper level based on the methamphetamine amount. We address the enhancement for the firearm possession infra.

427 (4th Cir.1989); *United States v. Weidner,* 703 F.Supp. 1350 (N.D.Ind.1988). *Compare United States v. Vasquez,* 874 F.2d 250 (5th Cir.1989).

 In the instant case, a large number of firearms was discovered during the search of Koonce's Utah residence. There were several loaded firearms found in Koonce's pickup truck in which was also found Koonce's briefcase. The court acknowledged that "[c]ertainly, there wasn't anyone present with Mr. Koonce at the time the drugs involved here were mailed and so there is certainly no way of knowing whether at that time he had in his possession a firearm." Sentencing Transcript at 57. The court continued: "It is the view of the Court in interpreting these Guidelines that it is the clear intention of the Guidelines to provide that any drug dealer who possesses firearms in connection with his drug affairs creates an additional hazard and that additional penalties should be proscribed therefor." *Id.* The district court thus allowed for a two-level enhancement of Koonce's sentence, to a 36. *Id.* at 58. We stress that the offense of conviction was the *distribution* (not merely the mailing of the package) of methamphetamine. Given that (1) tape similar to that found on the mailed parcel of methamphetamine was found in Koonce's bedroom; (2) Koonce's pickup truck had loaded firearms [8] in it; (3) Koonce's briefcase was also in the pickup (the briefcase also contained express mail receipts (similar to those that would have been detached from the parcel mailed to Sioux Falls) and Petschen's letter, referring to past drug deals between the two, and giving Koonce the Sioux Falls address to which the parcel was to be (and *was*) mailed). After considering this information, the trial court determined that it was not "clearly improbable" that the guns were connected with the offense. We cannot say that the district court's determination was clearly erroneous. We thus af-

firm the judgment of conviction and the sentence as rendered.[9]

Judgment affirmed.

---

**8.** This court has recognized that firearms are "tools of the [drug dealer's] trade," *see United States v. LaGuardia,* 774 F.2d 317, 320 (8th Cir.1985); *United States v. Milham,* 590 F.2d 717, 721 (8th Cir.1979).

**9.** Although the trial court found that the appropriate Guideline range was 235 months to 293 months, Koonce was sentenced to 240 months' imprisonment, the statutory maximum. Sentencing Transcript at 59.