**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George Franklin PATRICK, Jr.,
Defendant–Appellant.**

No. 90–3451.

United States Court of Appeals,
Eleventh Circuit.

Feb. 12, 1993.

Rehearing and Rehearing En Banc
Denied Feb. 12, 1993.

Sheryl Lowenthal, Coral Gables, FL, for defendant-appellant.

Bruce Hinshelwood, Asst. U.S. Atty., Orlando, FL, for plaintiff-appellee.

On Petition for Rehearing

Before HATCHETT and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

DUBINA, Circuit Judge:

The appellant's petition for rehearing is granted. Our previously published opinion in *United States v. Patrick*, 960 F.2d 950 (11th Cir.1992), is vacated. This opinion is entered in lieu thereof.

After a four day jury trial, George F. Patrick, Jr. ("Patrick") was found guilty of having "willfully and knowingly conspired, combined, confederated, and agreed with other persons ... to manufacture and distribute, and to possess with intent to manufacture and distribute 100 grams or more of methamphetamine, its salts, isomers, and salts of its isomers ..." in violation of 21 U.S.C. § 846 as charged in Count Two of the indictment. *See also* 21 U.S.C. §§ 802(6), 812(c) (Schedule II)(c), 841(a)(1), 841(b)(1)(A)(viii). Patrick was sentenced to 151 months imprisonment, $2,000.00 costs of imprisonment, and a $50.00 assessment fee, with five years of supervised release to follow his confinement.

Patrick raises many issues on appeal, including the propriety of the sentencing court's determination to score the methamphetamine as "Methamphetamine (Pure)" rather than "L–Methamphetamine/Levomethamphetamine/L–Desoxyephedrine" under the Drug Equivalency Tables of the United States Sentencing Guidelines. U.S.S.G. § 2D1.1. After reviewing the record, we are persuaded that there is no merit in Patrick's arguments concerning all issues but one, and affirm as to them without opinion.[1] For the reasons that follow, however, we vacate Patrick's sentence on the ground that the sentencing court scored the drug erroneously.

## I. BACKGROUND

On July 3, 1989, the Drug Enforcement Administration ("DEA") Task Force obtained a warrant to search a purported methamphetamine lab. During the search the DEA seized a container holding approximately two and one-half gallons of brown liquid, later identified as methamphetamine.[2] The DEA also seized various precursor chemicals used in the manufacture of methamphetamine, such as phenyl acetic acid, phenyl–2–propanone, methyl amphetamine, acetic anhydride, and hydrochloric acid.

On the same day, Patrick was arrested pursuant to a valid warrant of arrest.

## II. CONTENTIONS OF PARTIES

Patrick alleges that "methamphetamine" is a generic term encompassing two types of drugs: regular "Methamphetamine" (D-methamphetamine or Dextro-methamphetamine) and "L-methamphetamine/Levo-

---

1. Patrick challenges the following actions of the district court: (1) its attribution of 3.6 kilograms of controlled substance to him, (2) its denial of his motions for a new trial on grounds of prosecutorial misconduct and the government's withholding of his business records, (3) its jury instruction concerning deliberate ignorance, (4) its denial of his request to represent himself, (5) its order requiring him to testify after he had entered into an immunity agreement, and (6) its admission (without objection) of business records allegedly seized without a warrant or probable cause. We cannot review the issue of prosecutorial misconduct on direct appeal because the record is devoid of any evidence of the alleged misconduct. The remaining challenges are meritless.

2. Although the exact weight of this container was not given, a DEA chemist stated that it weighed at least 100 grams, and probably ten times more than that.

methamphetamine." The involvement of regular D-methamphetamine requires a significantly harsher sentence under the sentencing guidelines than that for an equal quantity of L-methamphetamine. U.S.S.G. § 2D1.1.

Patrick alleges that by using the term "methamphetamine," the government's expert witnesses failed to establish which of the two types was seized and, therefore, the base offense level should have been determined upon the less potent L-methamphetamine. Although the brown liquid was tested to determine that it contained methamphetamine, proof of which type of the drug was involved would have been impossible without the administration of the more sophisticated "plane polarized light" test, or the "optically active column" test. No such testing was performed. Although at trial Patrick did establish that there are two types of methamphetamine, he did not specifically argue that the indictment and the testimony of the government's experts were ambiguous until sentencing.

He argues that the district court should have assumed that all proof connecting him with a conspiracy to manufacture and distribute "methamphetamine," and the jury's verdict of guilt on an indictment for "methamphetamine," refers to L-methamphetamine. Patrick provided no basis to the district court, other than the fact there are two types of methamphetamine, to support this contention. The government contends that "[t]he evidence at trial was ... unequivocal that the substance ... was methamphetamine.... The record contains absolutely no evidence that the controlled substance was L-methamphetamine." (Br. 18).

In applying the guidelines, the district court found that D-methamphetamine was involved.

## III. STANDARD OF REVIEW

We review the district court's factual determinations in applying the sentencing guidelines under the clearly erroneous standard. *E.g., United States v. Kramer,* 943 F.2d 1543, 1549, 1551–52 (11th Cir. 1991) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992); *United States v. Weaver,* 920 F.2d 1570, 1573 (11th Cir.1991); *United States v. Wilson,* 884 F.2d 1355, 1357 (11th Cir.1989).

## IV. DISCUSSION

Since the scoring issue was raised at sentencing only, and was not an element of the offense charged, the district court had only to find by a preponderance of the evidence that the controlled substance was D-methamphetamine. *See, e.g., United States v. Mieres–Borges,* 919 F.2d 652, 662 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1633, 113 L.Ed.2d 728 (1991).[3] The burden of persuasion and production, however, falls upon the government as a matter of due process to establish not only the elements of the offense as defined by the legislature but also each aggravating factor upon which a harsher sentence is to be based. *Id.* (*citing McMillan v. Pennsylvania,* 477 U.S. 79, 84–85, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986); *United States v. Cross,* 916 F.2d 622, 623 (11th Cir.1990) (per curiam), *cert. denied,* —— U.S. ——, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991); *United States v. Ignancio Munio,* 909 F.2d 436, 439 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991); *United States v. Alston,* 895 F.2d 1362, 1372–73 (11th Cir.1990)). While irrelevant to the question of guilt, the type of methamphetamine involved was essential to the government's request that it be scored as D-methamphetamine during the sentencing phase, and the government rather than Patrick carried the burden of producing evidence on this issue. Absent express action by the legislature to require treating the nature of the controlled substance as akin to an affirmative defense, *see, e.g., Patterson v. New York,* 432 U.S.

---

**3.** This court stated in *United States v. Williams,* 876 F.2d 1521, 1525 (11th Cir.1989), that "[t]he nature and quantity of the controlled substance are relevant only to sentencing and do not constitute elements of a lesser included offense." *See also United States v. Cross,* 916 F.2d 622, 623 (11th Cir.1990) (per curiam), *cert. denied,* —— U.S. ——, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991).

197, 210–211, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977), we would exceed our authority by shifting the burden of proof to Patrick.[4]

■ Two government chemists testified at trial concerning the substances attributed to Patrick. Charles C. Clark ("Clark"), a forensic chemist employed by the DEA, testified that a container found in Patrick's clandestine lab contained a mixture of phenyl–2–propanone and methamphetamine. A second chemist, Glenn Harbison, testified that the substance found in the possession of a coconspirator contained methamphetamine. In both instances, the chemists testified that methamphetamine was the substance involved. Neither chemist testified as to whether the substance was D-methamphetamine or L-methamphetamine.

On cross examination Clark was asked the following question:

Now, we have been discussing methamphetamine. Methamphetamine is almost a slang term, right? I mean there's L-methamphetamine and there's D-methamphetamine?

Clark responded:

That's true. What he's referring to is like right and left-handed people. Methamphetamine can be the same way, the molecule can either be right or left-handed.

(R:3–280).

At trial, there was no particular reason to believe that the term "methamphetamine," as it was constantly employed by the trial participants, referred to L-methamphetamine. Patrick was indicted for "methamphetamine," the jury was instructed on "methamphetamine" and Patrick was found guilty on the basis of "methamphetamine" having been involved. On the other hand, there was no evidence presented to suggest that the drug actually involved was the more potent D-methamphetamine,

and such evidence could not have been adduced without performing the more sophisticated testing which is needed to distinguish between the two types of the drug. Without such evidence, whether presented at trial or during the sentencing hearing, we cannot accept the district court's determination that D-methamphetamine was actually involved.

■ In using the term "Methamphetamine," the sentencing guidelines do not mean to include L-methamphetamine. The guidelines distinguish between "Methamphetamine" and L-methamphetamine by supplying a different sentence for the involvement of each controlled substance. U.S.S.G. § 2D1.1, Drug Equivalency Tables. This terminology, however, cannot lead to the inference that the term "methamphetamine" when used in legal proceedings means D-methamphetamine. There must be proof, not a play on words, to justify the added deprivation of liberty that follows the scoring of the drug as D-methamphetamine.

In *United States v. Koonce*, 884 F.2d 349 (8th Cir.1989), the Eighth Circuit considered this issue in an analogous fact situation. Although the chemists testified in *Koonce* that methamphetamine was involved, they never identified the type of methamphetamine. As here, the defendant in *Koonce* raised the issue of ambiguity as to the type of drug at the sentencing hearing. The Eighth Circuit permitted the trial court to rely on its belief that the controlled substance was more likely D-methamphetamine than L-methamphetamine, on the basis of *evidence* that a related shipment of the drugs had actually contained D-methamphetamine. 884 F.2d at 352–53.

Although not cited in the government's brief, *United States v. Harrell*, 737 F.2d 971 (11th Cir.1984), *cert. denied*, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985),

4. *Patterson* upheld the action of the New York legislature requiring the defendant to show, by a preponderance of the evidence, that his act of homicide was mitigated by the influence of extreme emotional distress so as to constitute the offense of manslaughter rather than murder.

Of course, we express no opinion on the constitutionality of such a course under the Due Process Clause of the Fifth Amendment and *Patterson* in the context of methamphetamine scoring at sentencing, should Congress choose to embark upon it.

is relevant to our disposition of this issue.[5] There, an allegedly ambiguous indictment charged a conspiracy by a motorcycle gang to distribute several different kinds of drugs, including cocaine. The defendants argued that their sentences, which reflected the more severe maximum penalty that applies when cocaine is an object of the conspiracy, were erroneous because the sentencing judge could not have determined with certainty whether the jury found that cocaine was involved. We held that defendants who failed to raise an objection to the form of the indictment, a request for a special verdict, or an objection to the jury instructions, could invoke our review only for "clear and prejudicial error," 737 F.2d at 981–82, and that the trial judge's ruling was not clearly erroneous and prejudicial in light of voluminous direct evidence that cocaine had been involved. 737 F.2d at 982, 979, n. 9 at 979. *See also United States v. Vincent,* 648 F.2d 1046, 1050 (5th Cir. Unit A June, 1981) (refusing to order new trial despite ambiguous general verdict because evidence plainly showed a felonious theft of almost $2,500 in public money, rather than lesser included misdemeanor theft of $100 or less). The absence of such identifying evidence in the present case distinguishes both *Harrell* and *Vincent.*

■ Furthermore, the statements in *Harrell* and *Vincent* that only "clear and prejudicial error" can justify reversing a sentence based upon an ambiguous verdict and indictment in the absence of an objection *at trial* were mere dicta with respect to the issue presented in the case at bar: the effect of an objection to the sentence, raised during the sentencing hearing. In neither opinion did we indicate that such an objection had been raised before the sentencing judge. Although *Vincent* holds that an objection must be raised at trial, the only issue before the court in that case concerned the propriety of the district court's jury instructions and the defendant's request for a new trial. Here, Patrick does not challenge the jury's verdict but rather the government's proposed scoring of the drug at sentencing. Both D-methamphetamine and L-methamphetamine are controlled substances, and a conspiracy to manufacture either of them for distribution is an offense under 21 U.S.C. § 846. Therefore, Patrick was not required to raise his objection until the sentencing hearing, and we simply apply the clearly erroneous standard that ordinarily guides our review of factual determinations made by the district court.

The holding of *United States v. Francesco,* 725 F.2d 817 (1st Cir.1984), is not to the contrary. There, the First Circuit held that absent objection at trial, the government need not prove that an illegal isomer of cocaine rather than an uncontrolled derivative was involved. *Accord United States v. Puglisi,* 790 F.2d 240, 242 (2d Cir.), *cert. denied,* 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986). Both *Francesco* and *Puglisi* involved challenges to the underlying convictions, rather than objections to the characterization of evidence at sentencing.

■ The First Circuit's dictum is also instructive: the government need not prove "that a term used in its commonly understood sense has no other meaning—at least until the possibility of another meaning is raised by the defense." *Francesco,* 725 F.2d at 821. Here, however, it is clear that the district court was apprised of the possibility of multiple meanings during the course of the trial and upon Patrick's objection to the government's scoring of the drug at the sentencing hearing. *Cf. United States v. Evans,* 941 F.2d 267, 273 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 451, 116 L.Ed.2d 468 (1991). Moreover, we hold as a matter of law that the mere existence of a *more* common meaning for a term that determines the application of an aggravating factor under the guidelines is no substitute for proof that such an aggravating factor is present in the case. Facts, not words or presumptions about their meaning, are required to support a proposal by the government to enhance a defendant's sentence.

---

5. The government's brief cites no cases that are relevant to this issue.

With no evidence to support the government's position, the district court committed error in relying on its belief that Patrick was convicted of conspiracy to manufacture and distribute 100 grams or more of regular D-methamphetamine.

## V. CONCLUSION

Patrick's conviction is due to be affirmed; however, for the foregoing reasons, we vacate his sentence and remand for resentencing.

AFFIRMED in part, VACATED in part, and REMANDED.