19 F.3d 1438
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
UNITED STATES of America, Appellee,
v.
David Derrin MATHEWS, Appellant.
United States of America, Appellee,
v.
Peter Mitchell Mathews, Appellant.
 Nos. 93-3519, 93-3320.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: March 11, 1994.
Filed: March 25, 1994.
 
 Appeals from the United States District Court for the Northern District of Iowa.
 N.D.Iowa
 AFFIRMED.
 Before McMILLIAN, MAGILL, and BEAM, Circuit Judges.
 PER CURIAM.
 
 
 1
 In these consolidated cases, Peter and David Mathews appeal their sentences imposed by the district court[1] after they pleaded guilty to conspiracy to distribute and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. Secs. 841(a)(1), (b)(1)(A) and 846. We affirm both sentences.
 
 
 2
 Peter's presentence report (PSR) indicated a base offense level of 38 for his involvement with over 8 kilograms of methamphetamine, a three-level acceptance-of-responsibility reduction, a total offense level of 35, a criminal history category of I, and an ensuing sentencing range of 168 to 210 months. At sentencing, Peter argued for the first time that the type of methamphetamine involved was Levo or L-methamphetamine, rather than Dextro or D-methamphetamine. Under the Guideline Equivalency Table, L-methamphetamine results in a significantly lower base offense level than does D-methamphetamine. See U.S.S.G. Sec. 2D1.1, Drug Equivalency Tables.
 
 
 3
 At sentencing, co-conspirator and supplier William Thomas testified that he made his ephedrine from White Cross tablets. He did not know personally, but had heard that this process produces D-ephedrine, which in turn produces L-methamphetamine. On cross-examination, Thomas conceded that government laboratory reports identified all the ephedrine seized at his laboratory as L-ephedrine. After examining the signed government laboratory reports, the court determined they had sufficient indicia of reliability to be admitted for sentencing purposes. The reports identified all the ephedrine seized as L-ephedrine, and all the methamphetamine seized from Thomas and both Mathews brothers as D-methamphetamine. DEA Agent Richard LaMere testified that the laboratory reports analyzed substances seized in this case and that L-ephedrine produces D-methamphetamine.
 
 
 4
 The court determined the government had met its burden of showing by a preponderance of the evidence that the methamphetamine involved in this case was D-methamphetamine. Although tests must be run, the court concluded it was not necessary for a chemist to attend the sentencing and testify he performed the tests. The court sentenced Peter to 180 months imprisonment and five years supervised release, and imposed a $2000 fine. On appeal, Peter argues the laboratory reports did not have sufficient indicia of reliability, and the government did not meet its burden of proof.
 
 
 5
 A sentencing court may consider relevant evidence which might be inadmissible at trial provided "the information has sufficient indicia of reliability." U.S.S.G. Sec. 6A1.3(a). Laboratory reports testing controlled substances are in fact admissible at trial, see United States v. Baker, 855 F.2d 1353, 1359-60 (8th Cir. 1988), cert. denied, 490 U.S. 1069 (1989), and LaMere testified the reports analyzed substances seized in this case. The government bears the burden of proving what type of methamphetamine is involved, see United States v. Wessels, 12 F.3d 746, 754 (8th Cir. 1993), and the court's finding on this issue will not be reversed unless clearly erroneous. See United States v. Koonce, 884 F.2d 349, 352-53 (8th Cir. 1989). The report results here clearly and consistently identified the type of methamphetamine involved, and were contradicted only by Thomas's uncertain testimony. We find no error.
 
 
 6
 David's PSR indicated a base offense level of 38, a three-level acceptance-of-responsibility reduction, a total offense level of 35, a criminal history category of III, and an ensuing Guideline range of 210 to 262 months. At sentencing, both parties stipulated to a suggested base offense level of 38, a two-level reduction for David's minor role in the offense, and a three-level reduction for acceptance of responsibility, resulting in a suggested total offense level of 33; with a criminal history category of III, the resulting Guideline range was 168 to 210 months.
 
 
 7
 David objected to the lack of a government motion for downward departure based on substantial assistance. He testified that he had assisted the DEA in Minnesota: he gave them some names and addresses, and tried to get recordings for them, although he did not participate in controlled buys. On cross-examination, he conceded he had only one interview with a DEA agent, at which he provided names and addresses, and he made only one recording-with a person who had already been arrested. Agent LaMere testified that David was cooperative, but that he had difficulty providing last names, he did not name all the individuals he was involved with, and no cases were prosecuted based on his information. David argued that he cooperated "to his fullest potential." He argued he should have received a U.S.S.G. Sec. 5K1.1 motion, and "there was a good-faith breach on the part of the Government."
 
 
 8
 The court noted that the parties merely disagreed as to whether David's cooperation was substantial enough to warrant a government departure motion; absent a specific allegation of improper motive, the refusal to make a substantial-assistance motion is within the government's discretion. The court sentenced David to 168 months imprisonment and five years supervised release, and imposed a $2500 fine.
 
 
 9
 On appeal, David argues that the district court erred in determining it lacked discretion to depart downward absent a government motion where the government refused to make a substantial-assistance motion and he raised issues of sentencing disparity and prosecutorial misconduct.
 
 
 10
 A district court may depart downward for substantial assistance without a government motion only when "the defendant makes a 'substantial threshold showing' of prosecutorial discrimination or irrational conduct." United States v. Romsey, 975 F.2d 556, 557-58 (8th Cir. 1992) (quoting Wade v. United States, 112 S. Ct. 1840, 1844 (1992)). A defendant does not become entitled to a remedy or even an evidentiary hearing simply by asserting he "provided substantial assistance" or by making "additional but generalized allegations of improper motive." Wade, 112 S. Ct. at 1844. Here, David did not raise issues of sentencing disparity below, and he produced no evidence or specific allegations of prosecutorial misconduct or bad faith beyond a disagreement whether he had provided substantial assistance.
 
 
 11
 The judgments are affirmed.
 
 
 
 [1]
 The Honorable Michael J. Melloy, Chief Judge, United States District Court Judge for the Northern District of Iowa