**UNITED STATES of America, Plaintiff,**

v.

**Robert BLANKENSHIP, Defendant.**

**Nos. 95–3138, 89–30073.**

United States District Court,
C.D. Illinois,
Springfield Division.

Dec. 4, 1995.

David E. Risley, Asst. U.S. Attorney, Springfield, IL, for plaintiff.

Robert Blankenship, Duluth, MN, defendant pro se.

---

## OPINION

RICHARD MILLS, District Judge:

Methamphetamine—revisited.

And a mandatory minimum sentence.

This cause is before the Court on Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

This is the Court's preliminary consideration of this matter pursuant to Rule 4 of the Rules Governing Proceedings in the United States District Courts Under 28 U.S.C. § 2255, which provides: "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in district court, the judge shall make an order for its summary dismissal and cause the movant to be notified."

This case concerns whether Blankenship was prejudiced by the Court's failure to specifically find, at the time of sentencing, that the offense involved d- rather than l-methamphetamine. Although framed in terms of ineffective assistance of counsel (a Sixth Amendment claim) the crux of this case is the relationship of statutes and the Sentencing Guidelines.

For several years, the Sentencing Guidelines allowed different sentences depending upon which isomer of methamphetamine was involved in a criminal offense. The statute that imposes mandatory minimum sentences for certain drug offenses, however, treats the isomers identically.

Blankenship claims that he should have received the benefit of the Guidelines' approach to methamphetamine sentencing. He is unable to show that he was prejudiced, however, because this Court complied with the mandatory-minimum statute.

## I. BACKGROUND

### A. Facts

Defendant Robert Blankenship was found guilty by a jury of the sole count of the indictment, which charged that he violated 21 U.S.C. §§ 841(a)(1) and 846 by participating in a conspiracy involving more than 100 grams of methamphetamine or more than one kilogram of a mixture containing methamphetamine.[1]

At sentencing, the Court found Blankenship responsible for 1.817235 kilograms of methamphetamine and sentenced him to the mandatory minimum of 120 months. Blankenship's attorney objected to the computation of drug amounts in the Presentence Investigation Report, but he did not challenge the application of the mandatory minimum. Blankenship appealed his conviction but did not raise any of the arguments he raises in the instant motion.

### B. Methamphetamine Sentencing

The impact of the distinction between two forms of the drug known as methamphetamine has been the subject of much litigation. Defendants have raised a variety of creative arguments for why their sentences for crimes involving methamphetamine should be shortened. The reason for the recent flurry of litigation is the confusing way the Sentencing Commission chose to deal with methamphetamine. See United States v. Cook, 49 F.3d 663, 665 n. 3 (10th Cir.1995) ("[T]he guidelines' entire approach to methamphetamine sentencing is confusing and difficult to apply.").

While some points of the law in this area are open to debate, the basic scientific and textual background of the controversy is well established. Recently, the Third Circuit provided the following helpful description of the precise nature of methamphetamine.

The methamphetamine molecule, like most organic molecules, exists in different

---

1. Blankenship was involved in a multistate conspiracy to manufacture and distribute methamphetamine. He was one of eight conspirators charged in a single indictment. Another indictment charged ten more individuals. As a result of these charges, this Court sentenced fourteen defendants. Seven of the defendants received sentences of either 120 or 121 months imprisonment for their convictions on the conspiracy counts. Five of those defendants received additional five year sentences on related firearms charges. Three defendants received sentences far in excess of 120 months on the drug charges, while four received significantly shorter sentences.

"isomeric" forms. Isomers "are compounds that have the same molecular formula by different structural formulas." Harold Hart, Organic Chemistry: A Short Course 15 (6th ed. 1983) ("Organic Chemistry Text"). Just as people are either right- or left-handed, a molecule can sometimes exist in right- and left-handed forms. *See* Organic Chemistry Text at 125–126; Roger Hegestrom & Dilip K. Kondepudi, *The Handednesss of the Universe,* Scientific American, Jan. 1990, at 108 ("Hegestrom & Kondepudi Article"); *United States v. Patrick,* 983 F.2d 206, 209 (11th Cir.1993). A molecule "that exhibits the property of handedness" is called a chiral molecule. The two form of the chiral molecules are called enantiomers.

Each enantiomer is labelled either Dextro of Levo, or D or L. Hegestrom & Kondepudi Article at 109.... Although enantiomers only differ with respect to chirality, the human body "is highly sensitive to enantiomeric differences." Id. ...

Methamphetamine exists in these two isomeric forms. L-methamphetamine is a compound that produces little or no physiological effect when ingested. [*United States v.*] Carroll, 6 F.3d [735, 743 (11th Cir.1993)] D-methamphetamine, on the other hand, produces the physiological effect desired by its users. *Id.*

*United States v. Bogusz,* 43 F.3d 82, 88–89 (3d Cir.1994), *cert. denied sub nom O'Rourke v. United States,* —— U.S. ——, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995).

Congress did not distinguish between the two forms of methamphetamine when it included methamphetamine offenses in the mandatory minimum sentence provisions of 21 U.S.C. 841(b)(1)(A). Instead of providing a mandatory minimum only for offenses involving the powerful drug d-methamphetamine, Congress imposed the same minimum penalty for all offenses involving "100 grams or more of *methamphetamine, its salts, isomers and salts of its isomers* or 100 grams or more of a mixture or substance containing a detectable amount of *methamphetamine,*

its salts, isomers, or salts of its isomers;" 21 U.S.C. § 841(b)(1)(A)(viii) (1988) (emphasis added).[2]

Under the statute, a person convicted of certain drug offenses involving the requisite amount of "methamphetamine, its salts, isomers and salts of its isomers" or "a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers ... shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life...." 21 U.S.C. § 841(b)(1)(A). *See generally, United States v. McCusker,* Nos. Crim.A. 92–33–04, Civ. A. 95–3494, 1995 WL 613103 (E.D.Pa. Oct. 19, 1995), at *3, *5 (describing in detail the history of methamphetamine sentencing). Confusion over methamphetamine sentencing resulted because, until recently, the Sentencing Guidelines provided different base offense levels for two isomers of methamphetamine. The Drug Quantity Table, U.S.S.G. § 2D1.1(c), refers only to "Methamphetamine," distinguishing only between the weight of the drug itself and of the mixture containing the drug. The Drug Equivalency Tables (used to determine offense levels for less common drugs and for combined amounts of different drugs), however, refer to both "Methamphetamine" and "L–Methamphetamine." U.S.G.G. § 2D1.1, comment (n. 10) (Drug Equivalency Table). The ratios in the Drug Equivalency Tables result in one gram of "Methamphetamine" being treated as the equivalent of 25 grams of l-methamphetamine. *Id.*

As a result of this approach, Courts have concluded that when the Guidelines referred to "Methamphetamine" they meant d-methamphetamine. *See United States v. Deninno,* 29 F.3d 572, 579 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995). That interpretation does not carry over to § 841(b). *See McCusker,* 1995 WL 613103, at *5 (noting that if the term "methamphetamine", as used in the statute, meant only d-methamphetamine, l-methamphetamine would have to be considered a legal drug, something it is clear-

---

**2.** In 1990, Congress amended § 841 to apply to offenses involving either 100 grams of methamphetamine or one kilogram of a mixture or sub-

stance containing a detectable amount of methamphetamine. Crime Control Act of 1990, Pub.L. No. 101–647, 104 Stat. 4789, 4830 (1990).

ly not). To argue that the statute imposes a mandatory minimum sentence for offenses involving d-methamphetamine would contradict the clear language of the statute.[3] Section 841 refers not to "Methamphetamine" but to methamphetamine and its isomers—d- and l-methamphetamine. *See McCusker*, 1995 WL 613103, at *5.[4]

The Sentencing Commission recently resolved this problem with Amendment 518, which deletes the reference to l-methamphetamine. The Commission designed Amendment 518 to simplify sentencing and end litigation over the type of methamphetamine involved. *See* United States Sentencing Commission, Amendments to the Sentencing Guidelines, Oct. 2, 1995, at 72. Additionally, the Commission noted that l-methamphetamine "is a rather weak form of methamphetamine, is rarely seen and is not made intentionally, [but] ... results from a botched attempt to produce d-methamphetamine." *Id.*

Under § 841, the mandatory minimum sentence may be imposed for an offense involving more than 100 grams of methamphetamine or one kilogram of a substance containing methamphetamine, regardless of which enantiomer was involved in the offense. *See McCusker*, 1995 WL 613103, at *6; *United States v. Massey*, 57 F.3d 637, 638 (8th Cir.1995) (per curiam) ("Regardless of which type of methamphetamine was going to be manufactured in this case, the statutory mandatory minimum of 120 months would apply, and Massey could not have been sentenced below this figure."); *see also United States v. Allison*, 63 F.3d 350, 354 (5th Cir.1995) (noting the impact of mandatory minima and maxima on potential sentences for methamphetamine offenses), *cert. denied*, —— U.S. ——, 116 S.Ct. 405, 133 L.Ed.2d 324 (1995); *United States v. Dover*, No. 94–8040, 46 F.3d 1152 (10th Cir. Jan. 4, 1995) (Table of decisions, text in Westlaw, 1995 WL 3981 at *3) ("The statute ... draws no distinction between the two forms of methamphetamine."), *cert. denied*, —— U.S. ——, 116 S.Ct. 91, 133 L.Ed.2d 47 (1995). Even before Amendment 518, the Guidelines recognized that the mandatory minimum trumps the guideline sentence. U.S.S.G. §§ 5G1.1(b), (c)(2).

## II.  ANALYSIS OF BLANKENSHIP'S § 2255 CLAIMS

Blankenship asserts three grounds for his § 2255 motion: (1) ineffective assistance of counsel because his attorney did not discover or raise the methamphetamine scoring issue; (2) sentencing based on inaccurate information; and (3) miscarriage of justice. Blankenship recognizes that he is procedurally defaulted on all but his first claim.[5] As cause

3. Actually, the commentary to the Guidelines supported the same approach. Application note 5 to § 2D1.1 provides that references to a particular "controlled substance in these guidelines includes all salts, isomers, and all salts of isomers." Thus, the term "Methamphetamine" in the § 2D1.1(c) (Drug Quantity Table) should be read to include both d- and l-methamphetamine. The Drug Equivalency Tables, however, listed both "Methamphetamine" and "L-methamphetamine." Separate listings should have been unnecessary if application note 5 was true.

4. A similar debate concerning the impact of the Guidelines on the mandatory minimum sentences statute applicable to lysergic acid diethylamide (LSD) confirms the conclusion that the mandatory minimum applies without regard to the type of methamphetamine. *See United States v. Neal*, 46 F.3d 1405 (7th Cir.1995) (en banc), *cert. granted* —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 826 (1995). In *Neal*, the Seventh Circuit affirmed this Court's decision to apply the mandatory minimum sentence for LSD despite a lower Guidelines range. The Guidelines require LSD weight to be calculated on a standard per-dose basis. U.S.S.G. § 2D1.1(c), note *. The mandatory minimum sentence statute applies based on the entire weight of the LSD and the carrier medium. 21 U.S.C. § 841(b)(1)(A)(v) and (B)(v); *see also Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). After the *Chapman* decision, the Sentencing Commission amended the Guidelines to provide for a uniform per-dose weight for LSD, in order to prevent sentence disparities based upon the weight of the carrier medium. The Seventh Circuit held, however, that for the purpose of determining whether the mandatory minimum applies, the weight of the carrier medium and the LSD must be computed. *Neal*, 46 F.3d at 1409; *see also United States v. Stoneking*, 60 F.3d 399 (8th Cir.1995) (en banc).

5. If Blankenship had not raised any sort of constitutional claim, such as ineffective assistance of counsel, his objection to this court's sentence would not be cognizable under § 2255. *See United States v. Ward*, 55 F.3d 412, 413 (8th Cir.1995) (rejecting a claim that the substance involved was actually l-methamphetamine).

for these claims he raises ineffective assistance of counsel and what he terms "actual innocence of the sentence imposed." Blankenship's second argument for cause is insufficient.[6] Therefore, the Court will discuss only Blankenship's ineffective assistance claim.

■ To establish ineffective assistance of counsel, a defendant must show that counsel performed in a deficient manner and that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A court need not address counsel's performance first, but may proceed directly to the prejudice inquiry. *Id.* at 697, 104 S.Ct. at 2069. The prejudice standard is quite high: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068; *see also United States v. Delgado,* 936 F.2d 303, 310 (7th Cir.1991) (setting forth the standard for reviewing claims of ineffective assistance), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992).

In addition to the question of outcome determination, the Supreme Court recently held that, to show prejudice, a defendant must show that counsel's errors rendered "the proceedings ... fundamentally unfair or unreliable...." *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The Seventh Circuit has also made it abundantly clear that when ineffective assistance claims relate to the length of the sentence imposed, prejudice requires a significant impact on the length of the sentence. *See Durrive v. United States,* 4 F.3d 548, 551 (7th Cir.1993); *cf. Scott v. United States,* 997 F.2d 340 (7th Cir.1993) (suggesting that defendants cannot complain collaterally about their sentences so long as they fall within the statutorily permissible range).

■ Blankenship cannot show that he was prejudiced by his attorney's failure to raise the methamphetamine scoring issue. Blank-enship was not prejudiced because he received the minimum permissible sentence. Blankenship does not argue that his offense involved less than one kilogram of a substance containing some type of methamphetamine. Instead, he argues that because it is unknown whether his methamphetamine was d- or l-methamphetamine, he should have been sentenced as if it was l-methamphetamine, under the Guidelines' approach. But, regardless of what type of methamphetamine was involved, Blankenship received the proper sentence—the one required by 21 U.S.C. § 841(b). *See Stone v. United States,* No. 95–1153, 65 F.3d 172 (8th Cir.1995) (Table of Decisions, text in Westlaw, 1995 WL 492891) ("In the present case, counsel was not ineffective for not raising the issue of the methamphetamine type because regardless of which type was going to be manufactured, the statutory mandatory minimum of 120 months applied."); *see also Massey,* 57 F.3d at 638; *McCusker,* 1995 WL 613103, at * 6.

Blankenship's attempt to show prejudice also fails because he does not allege that the substance involved in his offense was anything other than d-methamphetamine. *United States v. Carper,* No. 95–1762, 1995 WL 631730 (8th Cir. Oct. 30, 1995) (unpublished order) (holding that absent an allegation that "the substance involved was L-methamphetamine, or that he believed it was," defendant was not prejudiced); *see also United States v. Stewart,* No. 94–1551, 66 F.3d 339 (Table of Decisions, text in Westlaw at 1995 WL 539473, at * 2); *United States v. Acklen,* 47 F.3d 739, 744 (5th Cir.1995) (holding that if the defendant could "tender some specific, verified basis or evidence, beyond his mere naked assertion or belief that the drug was in fact l-methamphetamine," he might be entitled to an evidentiary hearing). Blankenship does not offer any evidence that might prove he was entitled to a lower sentence under the Guidelines. He simply states "[i]f the issue had been raised, the Court, in the absence of any evidence, would have been required to

---

6. *See Ward,* 55 F.3d at 414. In *Ward,* the Eighth Circuit rejected an identical argument, stating: "If we were to accept this argument, every issue of fact material to a guidelines sentence ... could be litigated or relitigated on collateral at-tack. We reject this proposition. Justice does not require it." *But cf. Boyer v. United States,* 55 F.3d 296 (7th Cir.1995) (recognizing the possibility of actual innocence claims to habitual offender sentences).

sentence Petitioner under the less harsh penalties for L-methamphetamine...."

Finally, Blankenship does not argue that counsel's failure to raise the methamphetamine scoring issue resulted in a fundamentally unfair and unreliable proceeding.

Blankenship cites a number of cases that hold that the government must prove that the substance involved in an offense is in fact d-methamphetamine before the court may impose the more stringent penalties for that substance under the Sentencing Guidelines. *Deninno*, 29 F.3d 572; *United States v. Wessels*, 12 F.3d 746 (8th Cir.1993), *cert. denied*, ___ U.S. ___, 115 S.Ct. 105, 130 L.Ed.2d 53 (1994); *United States v. Carroll*, 6 F.3d 735 (11th Cir.1993), *cert. denied sub nom Jessee v. United States*, ___ U.S. ___, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994); *United States v. Patrick*, 983 F.2d 206 (11th Cir.1993); *United States v. Koonce*, 884 F.2d 349 (8th Cir.1989). While these cases certainly provide guidance for the Court in future methamphetamine sentencing, they do not help Blankenship's cause. For one reason or another these cases are inapposite. For instance, *Koonce* involved conduct that occurred before mandatory minimum sentences were applied to methamphetamine. *See Koonce*, 884 F.2d at 351 (noting that the arrest occurred on February 12, 1988—methamphetamine was added to the mandatory minimum statute in November of 1988). Other cases simply do not address the mandatory minimum issue. *See McCusker*, 1995 WL 613103 (discounting as guidelines driven, several cases).

### III.  CONCLUSION

Blankenship has raised two procedurally defaulted claims and one claim of ineffective assistance of counsel in his § 2255 motion. The only legally sufficient argument Blankenship tendered as cause for his default is ineffective assistance of counsel. Because Blankenship received the mandatory minimum sentence allowed for his offense, and because he has not alleged that the substance was anything other than the substance that he believed the Court assumed it to be, Blankenship cannot show that he was prejudiced by his attorney's alleged error. Because Blankenship cannot show prejudice as a result of his procedural defaults, or as a result of his attorney's alleged error, his motion must be denied.

It plainly appears from the face of the motion and the prior proceedings in this case that Blankenship is not entitled to relief.

*Ergo*, Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED.