UNITED STATES of America, Appellee,

v.

**Paul James JENNINGS, Appellant.**

UNITED STATES of America, Appellee,

v.

**Robert Lee JENNINGS, Appellant.**

Nos. 92–3522, 92–3527.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1993.

Decided Jan. 5, 1994.

---

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

BOWMAN, Circuit Judge.

In these consolidated appeals, Robert Lee Jennings appeals the sentence imposed by the District Court[1] after he pleaded guilty to conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. Paul James Jennings appeals his conviction for conspiracy to distribute methamphetamine. We affirm.

I.

Robert Lee Jennings ("Robert") and his younger brother, Paul James Jennings, were members of a large methamphetamine distribution organization operating in the Ottumwa, Iowa, area (the "Ottumwa drug ring"). The group regularly purchased methamphetamine from a supplier in California for distribution in the Ottumwa area. Robert was a courier and distributor for the Ottumwa drug ring. In 1991, he was arrested and charged with various narcotics offenses, along with ten co-conspirators, in a twenty-three count indictment. Pursuant to a plea agreement, Robert pleaded guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 (1988), and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (1988). The government and Robert reached no consensus on the weight of methamphetamine to be attributed to him for sentencing purposes.

In calculating the amount of methamphetamine to impute to Robert for sentencing purposes, the presentence report ("PSR") relied upon debriefing statements given by Robert, by co-conspirators Floyd and Lori Stockdall, and by a confidential informant working with the drug task force on this case. The PSR attributed a total of twelve pounds of methamphetamine to Robert based on Lori Stockdall's estimates of the number of trips Robert took to procure drugs for the Ottumwa drug ring and the weight of these drugs. Lori Stockdall also stated that after

Chip J. Lowe, Des Moines, IA (argued), for Paul James Jennings.

Brent D. Rosenberg, Des Moines, IA (argued) for Robert Lee Jennings.

Ronald M. Kayser, Des Moines, IA (argued), for U.S.

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

the Ottumwa drug ring received a "bad batch" of methamphetamine, Robert was dispatched to California to pick up a replacement batch. The PSR attributed to Robert the weights of both the "bad batch" and its replacement. The PSR concluded that, in total, Robert was responsible for 14.24 kilograms of methamphetamine. At the sentencing hearing, the District Court heard testimony from seven government witnesses including Floyd and Lori Stockdall. The court found Robert responsible for thirteen kilograms of methamphetamine. After granting Robert a two-level reduction for acceptance of responsibility, the court calculated Robert's total offense level as 34. United States Sentencing Commission, *Guidelines Manual*, §§ 2D1.1(c) and 3E1.1 (Nov.1991). The punishment range for this level is 151 to 188 months.[2] The court then imposed two concurrent 151–month terms of imprisonment. Robert appeals this sentence, arguing that the District Court erred in determining the type and amount of methamphetamine attributable to him for sentencing purposes.

█ Robert argues that the government failed to meet its burden of proving that the methamphetamine attributed to him was dextro-methamphetamine ("d-meth") rather than levo-methamphetamine ("l-meth") and, thus, that the District Court erred in finding that all the controlled substances involved were d-meth.[3] At sentencing, the government must prove that the methamphetamine attributed to the defendant is more likely than not d-meth. *United States v. Patrick*, 983 F.2d 206, 208 (11th Cir.1993); *United States v. Townley*, 929 F.2d 365, 369 (8th Cir.1991). Here the government produced three expert witnesses who testified concerning the drug type. After hearing their testimony, the District Court found that all the methamphetamine was of the d-meth variety. We will reverse the District Court only if this finding is clearly erroneous.

At the sentencing hearing, the government's experts testified that they had examined eight samples of methamphetamine attributed to Robert. Six of the samples were

methamphetamine obtained by the confidential informant from Robert on three separate occasions. The other two samples were portions of the replacement batch attributed to Robert. All eight proved to be d-meth. In addition, the experts testified that l-meth is almost never found in samples seized in either California or Iowa. *See* Tr. of Sentencing Hr'g at 109, 126, 134. As to the "bad batch," which was not recovered by the government and, thus, never tested, Lori Stockdall testified it produced no "buzz" when she ingested it. On the other hand, Floyd Stockdall testified it was so toxic it burned the hands of anyone who handled it. Floyd also testified that the substance emanated a very strong odor of methamphetamine and came from the same source that normally provided the Ottumwa drug ring with good quality methamphetamine. Considering this evidence, we cannot say that the District Court clearly erred in finding that all the methamphetamine attributed to Robert was more likely than not d-meth. *See United States v. Koonce*, 884 F.2d 349, 352–353 (8th Cir.1989); *United States v. Brett*, 872 F.2d 1365, 1372 (8th Cir.), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989).

█ Robert next argues that the District Court erred when it attributed the "bad batch" to him in computing his sentence because neither Robert nor any of his co-conspirators considered the substance saleable nor did they ever intend to distribute it. Robert further argues that the District Court erred in attributing to him the weights of both the "bad batch" and the replacement batch. He contends that the Ottumwa drug ring had no intention to purchase or distribute more than one of these batches. Robert concedes that he did not raise either of these issues concerning the use of the "bad batch" for sentencing purposes in the District Court. We therefore consider these "bad batch" issues only under the plain error standard of review, which precludes reversal of the District Court unless Robert can show that (1) the court committed an error; (2) the error

2. Robert Jennings had a criminal history category of I.

3. When d-meth is involved, the Guidelines require a significantly harsher sentence than that indicated for an equal quantity of l-meth.

is plain, *i.e.*, clear under current law; and (3) the error affected his substantial rights. Fed.R.Crim.P. 52(b); *United States v. Olano*, —— U.S. ——, ——–——, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993); *United States v. Montanye*, 996 F.2d 190, 192 (8th Cir.1993) (en banc). We are convinced that Robert cannot satisfy this standard. This Court has not previously addressed the issue of the use of "bad batches" of methamphetamine for sentencing purposes, and the Sentencing Guidelines do not speak directly to this question. We thus are unable to conclude that the error here, if any there was, should have been clear to the District Court under the current law. We conclude that the District Court did not commit plain error.

Finally, Robert contends that the District Court's finding that he was responsible for a total of thirteen kilograms of methamphetamine is clearly erroneous, as the government did not establish with specificity either the dates of the drug transactions for which he was found responsible or the amounts of the drugs involved in each. Although Robert raised this argument in his written objections to the PSR, he failed to pursue the issue at his sentencing hearing. Thus, we are again limited to reviewing the record for plain error affecting Robert's substantial rights. *See Olano*, —— U.S. at ——–——, 113 S.Ct. at 1776–77. We find no plain error.

## II.

■ Paul Jennings ("Paul") was a distributor for the Ottumwa drug ring. As part of the investigation of this ring, law enforcement officers served a search warrant at Paul's residence on a Saturday morning at approximately 8:45 a.m. The executing officer testified that he pounded very loudly on the door and stated, "Police department, search warrant." Receiving no response after waiting twenty-nine seconds, the officers forcibly entered the house, conducted a search, and seized incriminating evidence. Paul later was charged along with his brother Robert and others in the multi-count in-

dictment already described in Part I of this opinion.

Paul filed a motion to suppress the evidence recovered in this search of his residence, arguing that the execution violated 18 U.S.C. § 3109 (1988) because the officers failed to "knock and announce." After an evidentiary hearing on the issue, the District Court denied the motion. Paul then entered an unconditional guilty plea to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846.

On appeal, Paul argues that the District Court erred in denying his motion to suppress. By entering an unconditional guilty plea[4], however, a defendant waives all challenges to the prosecution of his or her case except for those related to jurisdiction. *Smith v. United States*, 876 F.2d 655, 657 (8th Cir.), *cert. denied*, 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989). This waiver includes all claims on search and seizure grounds. *Id.* Thus, Paul's claim has been waived. It is not properly before this Court, and we do not address it.

## III.

■ Both Jennings brothers contend that they received ineffective assistance of counsel. Robert argues that his trial counsel provided ineffective assistance by failing to object to the finding contained in the PSR attributing the weight of the "bad batch" to him. He further argues that his counsel's failure to seek a continuance of the sentencing hearing until after November 1, 1992, at which time new sentencing guidelines became effective, constitutes ineffective assistance. Paul argues that his trial counsel rendered ineffective assistance of counsel by not fully advising him of the ramifications of his guilty plea. He asserts that he believed that he would receive only a three-year sentence and that his trial counsel did not inform him of the minimum five-year sentence applicable to his conviction. Paul also seems to assert that his counsel should have challenged the findings in the PSR attributing certain drug quantities to him and that this

---

4. We note that under Federal Rule of Criminal Procedure 11(a)(2), a defendant, with the approval of the court and the consent of the govern- ment, may enter a conditional plea reserving for appellate review adverse rulings on pretrial motions.

failure resulted in a sentence in excess of the mandatory minimum.

Generally, claims of ineffective assistance of counsel "are not cognizable on direct appeal." *United States v. Sanchez,* 927 F.2d 376, 378 (8th Cir.1991); *United States v. Murphy,* 899 F.2d 714, 716 (8th Cir.1990). Such claims properly are raised in a proceeding under 28 U.S.C. § 2255 or in a habeas corpus proceeding. The rare exception to this rule occurs when the district court has developed a record on the ineffectiveness issue. *United States v. Williams,* 897 F.2d 1430, 1434 (8th Cir.1990). Because no record was made in the District Court as to ineffective assistance of counsel, we decline to address these claims.

In each of these appeals, the judgment of the District Court is affirmed.