UNITED STATES of America,
Plaintiff–Appellee,

v.

Larry A. COOK, Defendant–Appellant.

Nos. 92–3238, 93–3027.

United States Court of Appeals,
Tenth Circuit.

March 6, 1995.

Robin D. Fowler, Asst. U.S. Atty. (Randall K. Rathbun, U.S. Atty., with him on the brief), Kansas City, KS, for plaintiff-appellee.

David J. Phillips, Federal Public Defender, Kansas City, KS, for defendant-appellant.

Before SEYMOUR, Chief Judge, BALDOCK, and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Larry A. Cook appeals the district court's denial, in part, of his "Motion to Correct Illegal Sentence Pursuant to 28 U.S.C. § 2255." We exercise jurisdiction under 28 U.S.C. § 1291.

On May 21, 1990, the United Parcel Service ("UPS") picked up a package addressed to Ralph Baker and sent by Steve Arp. The record reveals that UPS suspected the package contained narcotics. The UPS contacted the San Diego Narcotics Task Force. A San Diego Narcotics Task Force agent confirmed the UPS' suspicion the package contained narcotics after testing the contents. The Task Force agent suspected the name Steve Arp was fictitious because it did not match the address on the package and contacted the Drug Enforcement Agency ("DEA").

On May 23, 1990, a DEA agent posing as a UPS employee delivered the package to Ralph Baker and placed him under arrest. Mr. Baker subsequently agreed to cooperate with the government and revealed that Defendant was his supplier. According to Baker, Defendant sent him one pound packages of methamphetamine for $20,000 per pound. Baker related that he had received at least eighteen one-pound packages of metham-

phetamine from Defendant over the past six months.

The DEA tested the contents of the package and found a substance containing 440.7 grams of DL-methamphetamine, with 30% purity, or 132.2 grams of pure DL-methamphetamine. Defendant was subsequently placed under arrest and charged in Count One of a two-count indictment with conspiring to distribute more than three kilograms of a substance containing methamphetamine, 21 U.S.C. § 841(a)(1), and in Count Two with distributing 440.7 grams of a substance containing methamphetamine, 21 U.S.C. § 841(a)(1). Defendant pled guilty to Count Two and Count One was dropped.

Prior to sentencing, the United States Probation Office prepared a presentence report ("PSR"). The PSR concluded that Defendant's base offense level under the sentencing guidelines was level 32. To reach that conclusion, the PSR applied U.S.S.G. § 2D1.1(c) note *, which states "[i]n the case of a mixture or substance containing ... methamphetamine, use the offense level determined by the entire weight of the mixture or substance or the offense level determined by the weight of the pure ... methamphetamine, whichever is greater." U.S.S.G. § 2D1.1(c) note * (1989 version). The "entire weight of the mixture or substance" was 440.7 grams, which corresponds to a base offense level 28. See U.S.S.G. § 2D1.1(c) (1989 version). The PSR concluded the "pure methamphetamine" was 132.2 grams, which corresponds to a base offense level of 32. Id. Because level 32 was the greater of the two, the PSR concluded level 32 was appropriate.

The PSR increased Defendant's base offense level by two levels under U.S.S.G. § 3B1.1(c), concluding Defendant was an "organizer, leader, manager, or supervisor" of the criminal drug activity in which he was involved and subtracted two levels for acceptance of responsibility, U.S.S.G. § 3E1.1(a), to reach a final offense level of 32. Using offense level 32 and Criminal History Category I, the PSR calculated a guideline sentencing range of 121–151 months imprisonment. See U.S.S.G., Ch. 5 Pt. A, Sentencing Table.

Defendant's counsel did not object to the PSR's computation of his sentence. The district court therefore adopted the calculations of the PSR and sentenced Defendant at the low end of the guideline range to 121 months imprisonment.

In July 1992, defense counsel filed a notice of appeal, which we designated No. 92–3238. In December 1992, we removed defense counsel from representation of Defendant because counsel failed to prosecute the appeal. In January 1993, Defendant filed a pro se motion under 18 U.S.C. § 3582(c)(2) seeking additional credit for acceptance of responsibility. The district court denied this motion and defendant filed a notice of appeal, which we designated No. 93–3027. On January 28, 1993, we appointed Mr. David J. Phillips as counsel for Defendant. Mr. Phillips filed a motion to consolidate Defendant's two appeals and stay them so he could pursue relief through a 28 U.S.C. § 2255 motion. We granted both motions.[1]

In June 1993, Defendant through his attorney filed in the district court the instant "Motion to Correct Illegal Sentence Pursuant to 28 U.S.C. § 2255." In the § 2255 motion, Defendant argued his previous counsel was ineffective because he failed to object to the PSR's calculation of his base offense level.[2]

1. In April 1993, we consolidated Defendant's appeals as Nos. 92–3238, 93–3027. In July 1994, we reactivated Defendant's consolidated appeal and set the briefing schedule for the instant appeal. In the instant appeal, we are presented with no issues in appeal No. 92–3238 and that appeal is hereby dismissed. Moreover, Defendant states in his brief that he is abandoning the acceptance of responsibility claim he brought in appeal No. 93–3027. Hence, the district court's resolution of that claim stands. *United States v. Cook*, 997 F.2d 1312, 1316 (10th Cir.1993). The clerk's office has assigned the instant appeal No.

93–3027. The only claim we are presented with in this appeal is Defendant's § 2255 ineffective assistance of counsel claim.

2. Defendant also argued in his § 2255 motion that his offense level was improperly enhanced two levels because he was not an "organizer, leader, manager, or supervisor" in the criminal drug activity with which he was involved. See U.S.S.G. § 3B1.1(c). The district court agreed with Defendant and reduced Defendant's offense level by two levels, arriving at offense level 30. Using offense level 30 and Criminal History Cate-

Specifically, Defendant contended the PSR incorrectly calculated his base offense level based upon 132.2 grams of "pure methamphetamine," rather than 132.2 grams of DL-methamphetamine.

For purposes of addressing Defendant's argument, the district court assumed counsel was ineffective for failing to object to the PSR's calculation of his base offense level. The district court then rejected Defendant's argument on the merits, concluding the PSR properly computed Defendant's base offense level based upon the reasoning of the Eleventh Circuit in *United States v. Carroll*, 6 F.3d 735 (11th Cir.1993), *cert. denied sub nom.* —— U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994). Thus, the district court denied Defendant's § 2255 motion as to this claim. This appeal followed.

■ In this appeal, Defendant contends the district court erred in denying his § 2255 claim that his counsel was ineffective for failing to object to the calculation of his base offense level. To establish his ineffective assistance of counsel claim, Defendant must show that his counsel's performance was deficient and that he was prejudiced by the alleged deficiency. *United States v. Cook*, 45 F.3d 388, 392, (10th Cir.1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). In a § 2255 action, we review the district court's legal conclusions regarding ineffective assistance of counsel claims de novo. *See United States v. Fisher*, 38 F.3d 1144, 1146 (10th Cir.1994).

■ Defendant claims the court erroneously applied § 2D1.1(c) note * to compute his base offense level. That note directs the court to "in the case of a mixture or sub-

stance containing ... methamphetamine, use the offense level determined by the entire weight of the mixture or substance or the offense level determined by the weight of the pure ... methamphetamine, whichever is greater." U.S.S.G. § 2D1.1(c) note * (1989 version). Defendant contends the 132.2 grams of DL-methamphetamine are not "pure methamphetamine" under the sentencing guidelines, but rather a mixture of 50% D-methamphetamine and 50% L-methamphetamine—i.e., 66.1 grams D-methamphetamine and 66.1 grams L-methamphetamine. Because DL-methamphetamine is not, according to Defendant, "pure methamphetamine," Defendant maintains the district court erred in applying § 2D1.1(c) note * to compute his base offense level. Defendant contends the court should have computed his base offense level by separately calculating drug equivalents for the 66.1 grams of D-methamphetamine and 66.1 grams of L-methamphetamine using the Drug Equivalency Tables. *See* U.S.S.G. § 2D1.1, Drug Equivalency Tables. We review the court's interpretation and application of the sentencing guidelines de novo, *United States v. McAlpine*, 32 F.3d 484, 487–88 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 520 (1994), and the court's factual findings for clear error, *United States v. Bauer*, 995 F.2d 182, 183 (10th Cir.1993).

■ To determine whether the district court correctly applied § 2D1.1(c) note *, we must decide whether DL-methamphetamine is "pure methamphetamine" within the meaning of § 2D1.1, or is simply a mixture of D-methamphetamine and L-methamphetamine. The guidelines themselves do not specify what "pure methamphetamine" means.[3] Be-

gory I, the court calculated a guideline sentencing range of 97 to 121 months and sentenced Defendant to 97 months imprisonment. The government does not appeal the court's ruling on this issue.

3. The guidelines distinguish between "methamphetamine," which commonly refers to D-methamphetamine, *United States v. Deninno*, 29 F.3d 572, 579 (10th Cir.), *amended*, 1994 U.S.App. Lexis 25622 (10th Cir.1994), and L-methamphetamine, but do not refer to DL-methamphetamine at all. *See* U.S.S.G. § 2D1.1. Indeed, the guidelines' entire approach to methamphetamine sen-

tencing is confusing and difficult to apply. *See Carroll*, 6 F.3d at 749 (Bright, J., concurring in part and dissenting in part) (guidelines cause "confusion due to the convoluted chemical rhetoric" necessarily attendant to methamphetamine sentencing cases). The Sentencing Commission has acknowledged the problems plaguing methamphetamine sentencing in a proposed amendment to § 2D1.1. *See* 60 Fed.Reg. 2430 (1995). Under the proposed amendment, the distinction between D-methamphetamine and L-methamphetamine would be eliminated, resulting in identical treatment of all forms of methamphetamine under the guidelines. *Id.* at 2455–56.

cause the guidelines do not help us, we turn to the case law.

In *United States v. Carroll*, 6 F.3d 735, 744–45 (11th Cir.1993), the Eleventh Circuit held that "Pure Methamphetamine" includes DL-methamphetamine for sentencing purposes under § 2D1.1. In *Carroll*, the defendant was convicted of conspiring to manufacture and possess with intent to distribute methamphetamine. The district court found the conspirators produced 1.8 kilograms of DL-methamphetamine. In sentencing the defendant, however, the district court declined to consider how much, if any, of the 1.8 kilograms of DL-methamphetamine was "pure methamphetamine" for sentencing purposes under § 2D1.1. The district court reasoned that "pure methamphetamine" meant D-methamphetamine and thus did not include DL-methamphetamine. *Id.* at 743.

On appeal, the Eleventh Circuit reversed the district court. The *Carroll* court first noted that "the distinction between methamphetamine and pure methamphetamine refers to the relative purity of *any* methamphetamine compound ... [and] does not refer to a particular form of methamphetamine." *Id.* at 744 (emphasis added). The court referred to § 2D1.1 application note 5, which states "[a]ny reference to a particular controlled substance in these guidelines includes all salts, isomers, and all salts of isomers." *Id.* Thus, the court reasoned that "[e]xcept to the extent a particular molecular form of methamphetamine is treated separately by the Guidelines ... we must read references to 'Methamphetamine' as encompassing all forms of that substance." *Id.* at 745. Because L-methamphetamine is the only "particular molecular form" of methamphetamine treated separately by the guidelines, *see* U.S.S.G. § 2D1.1, Drug Equivalency Tables, the Eleventh Circuit concluded that "methamphetamine" and "pure methamphetamine" include DL-methamphetamine for sentencing purposes under § 2D1.1. *Id.*

Thus, the Eleventh Circuit based its holding on the conclusion that DL-methamphetamine is a third "molecular form" of methamphetamine instead of simply a mixture of D-

methamphetamine and L-methamphetamine. Because the district court adopted *Carroll*'s reasoning, the district court implicitly concluded DL-methamphetamine is a third "molecular form" of methamphetamine. The Third Circuit recently questioned the Eleventh Circuit's conclusion that DL-methamphetamine is a third "molecular form" of methamphetamine in *United States v. Bogusz*, 43 F.3d 82, 93 n. 10 (3d Cir.1994). In *Bogusz*, the court noted that standard chemistry texts recognize only the D-methamphetamine and L-methamphetamine forms of methamphetamine and view DL-methamphetamine as a combination of the two. *Id.* Additionally, the Sentencing Commission appears to be uncertain as to whether DL-methamphetamine is a third form of methamphetamine or is simply a mixture of D-methamphetamine and L-methamphetamine. *See* 60 Fed.Reg. 2430, 2456 (1995) ("In addition, there is another form of methamphetamine (dl-methamphetamine) that is composed of 50% d-methamphetamine and 50% l-methamphetamine.").

Thus, to determine whether the district court applied the guidelines correctly, we must first determine whether *Carroll* correctly concluded that DL-methamphetamine is a third "molecular form" of methamphetamine. To make that determination, we need expert testimony and evidence defining the chemical nature of DL-methamphetamine. Such expert testimony and evidence is entirely absent from the record before us. We therefore remand the case to the district court with instructions to: (1) determine by expert testimony the chemical nature of DL-methamphetamine—*i.e.*, whether DL-methamphetamine is simply a mixture of D-methamphetamine and L-methamphetamine, or something else; and (2) resentence Defendant accordingly.

We REMAND for further proceedings in accordance with this opinion. We dismiss the appeal in No. 92–3238.

The Sentencing Commission is considering the proposed amendment for possible submission to

Congress on May 1, 1995. *Id.* at *.