**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Wayne Boyd SEYFERT, Defendant-Appellant.**

No. 94–10804.

United States Court of Appeals, Fifth Circuit.

Oct. 27, 1995.

Wayne Boyd Seyfert, Florence, CO, pro se.

Tanya K. Northrup, Asst. U.S. Atty., Paul E. Coggins, U.S. Atty., Lubbock, TX, for appellee.

Before REAVLEY and EMILIO M. GARZA, Circuit Judges, and PRADO[1], District Judge.

PRADO, District Judge:

Wayne Seyfert appeals from the district court's dismissal of his motion, pursuant to

---

1. District Judge of the Western District of Texas, sitting by designation.

Title 28 U.S.C. section 2255 (1988), attacking his sentence. We affirm.

## I.

Seyfert pled guilty to one count of conspiracy to (1) possess with intent to distribute and (2) distribute less than 100 grams of a substance containing a detectable amount of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 846 (1988). The district court found that Seyfert had conspired to possess 53.845 grams of a mixture containing methamphetamine or 9.761 grams of actual methamphetamine. The district court based its sentence on the 9.761 grams of actual methamphetamine and sentenced Seyfert to a fifty-one-month term of imprisonment, a five-year term of supervised release, and a $50.00 special assessment. Seyfert appealed his sentence, arguing that the district court erred in enhancing his base offense level for possession of a dangerous weapon during the course of the conspiracy. This Court affirmed, holding that the district court's findings were not clearly erroneous.

Seyfert then filed his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. section 2255. Seyfert claimed 1) that the Government had failed to prove the quantity of d-methamphetamine, as opposed to l-methamphetamine, that was contained in the samples of methamphetamine used to calculate Seyfert's sentence; and 2) that his counsel had been ineffective for failing to raise the issue at sentencing.

The district court, based on the findings and recommendation of a United States Magistrate Judge, dismissed Seyfert's motion with prejudice. The court held that Seyfert's sentencing claim was procedurally barred because Seyfert could have raised it on direct appeal and had failed to do so and because it was not a constitutional issue. *See United State v. Vaughn,* 955 F.2d 367, 368 (5th Cir. 1992) ("A district court's technical application of the [Sentencing] Guidelines does not give rise to a constitutional issue."). The court then rejected Seyfert's ineffective assistance of counsel claim on the grounds that Seyfert could show no prejudice because the lab report showed all the methamphetamine to be d-methamphetamine. *See Strickland v.*

*Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (holding that a successful movant claiming ineffective assistance of counsel must show *both* that counsel's performance was defective and that the defective performance prejudiced the defense). Seyfert now appeals, reasserting both of his claims.

## II.

■ In reviewing a district court's denial of a Section 2255 motion, we review the district court's factual findings for clear error and we review questions of law de novo. *United States v. Gipson,* 985 F.2d 212, 214 (5th Cir.1993).

### A. Direct Attack on Sentence

■ Generally speaking, Section 2255 provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. *See United States v. Faubion,* 19 F.3d 226, 232 (5th Cir.1994); *United States v. Cates,* 952 F.2d 149, 151 (5th Cir.1992), *cert. denied,* 504 U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992); and 28 U.S.C. § 2255. In the present case, Seyfert's arguments in support of his first claim for relief under Section 2255 do *not* raise either a constitutional or a jurisdictional issue. *See Vaughn,* 955 F.2d at 368. The issue, then, is whether Seyfert's arguments in support of his first claim for relief provide some other legitimate basis for a collateral attack on his sentence.

■ The district court held that Seyfert's claim could have been raised on direct appeal and was not. Section 2255 does not reach errors not of a constitutional or jurisdictional magnitude that could have been reached by a direct appeal. *See United States v. Smith,* 32 F.3d 194, 196 (5th Cir. 1994); *Vaughn,* 955 F.2d at 368; and *United States v. Stumpf,* 900 F.2d 842, 845 (5th Cir.1990). We therefore affirm the district court's holding as to Seyfert's first claim.

## B. Ineffective Assistance of Counsel Claim

■■■ Seyfert claims that he received ineffective assistance of counsel because his counsel failed to object at sentencing to the lack of proof regarding the quantity of d-methamphetamine contained in the methamphetamine samples used to calculate Seyfert's sentence.[2] To prevail on this claim, Seyfert must prove both elements of the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also, United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir.1994) (holding that ineffective assistance of counsel claims asserted in a section 2255 motion must meet the *Strickland* test). Under *Strickland*, Seyfert "must show that his counsel's performance was both deficient (i.e. that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e. that errors by counsel actually had an adverse effect on the defense)." *Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir.1994) (internal quotations omitted). A failure to establish either deficient performance or prejudice defeats an ineffective assistance claim. *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071.

■■■ 1. The district court assumed for the sake of argument that Seyfert's counsel's performance had been deficient but rejected Seyfert's claim because Seyfert had failed to demonstrate the requisite prejudice. The court held that Seyfert could not have been prejudiced by his counsel's failure to raise the d-methamphetamine issue at sentencing because the Government's laboratory report showed that Seyfert's methamphetamine was, in fact, d-methamphetamine. However, the district court's holding was based on a mistaken reading of the laboratory report. The laboratory report summarizes an analysis of three methamphetamine samples. The first contained 3.7 grams of "d-methamphetamine," the second contained 5.8 grams of "d,l methamphetamine," and the third sample contained 0.261 grams of "d,l-methamphetamine." The magistrate judge's findings,

adopted by the district court, demonstrate a misunderstanding of the laboratory report; the court interpreted "d-l-methamphetamine" as "d,l–methamphetamine." It then assumed that "d,l–methamphetamine" was the same as d-methamphetamine and did not reach Seyfert's argument that the samples were at least partially composed of l-methamphetamine.

In light of the indication in the laboratory report that two of the three samples of methamphetamine were d,l–methamphetamine, the district court's finding that all three samples were d-methamphetamine was clearly erroneous. However, this Court can resolve Seyfert's claims as a matter of law.

2. Seyfert now questions the proper treatment of d,l–methamphetamine under the Sentencing Guidelines. While this is a potentially valid inquiry, we need not reach it today if Seyfert's counsel's performance was objectively reasonable. *See Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."). For this portion of our analysis we assume that Seyfert's counsel saw the laboratory report identifying all the methamphetamine samples as either d-methamphetamine or d,l–methamphetamine.

The Sentencing Guidelines do not explicitly address the issue of how d,l–methamphetamine should be treated for purposes of calculating a defendant's base offense level for a narcotics offense. Section 2D1.1(a)(3) provides that the base offense level for offenses involving drugs is to be calculated by reference to the Drug Equivalency Table in Section 2D1.1(c). *See* United States Sentencing Commission, *Guidelines Manual*, §§ 2D1.1(a)(3), 2D1.1(c) (Nov. 1991). With respect to methamphetamine, the Drug Quantity Table refers only to "Methamphetamine" and "Methamphetamine(actual)." This distinction is explained in a footnote to the table:

---

2. Establishment of ineffective assistance of counsel is generally sufficient to defeat the procedural bar. *See United States v. Acklen*, 47 F.3d 739, 742 (5th Cir.1995); and *United States v. Patten*, 40 F.3d 774, 776 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2558, 132 L.Ed.2d 811 (1995).

The terms "PCP(actual)" and Methamphetamine(actual)" refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP(actual). In the case of a mixture or substance containing PCP or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP(actual) or methamphetamine(actual), whichever is greater.

U.S.S.G. § 2D1.1 n*. The Drug Quantity Table weights "Methamphetamine(actual)" ten times more heavily than "Methamphetamine" for purposes of calculating a defendant's base offense level under Section 2D1.1.

The commentary to Section 2D1.1 contains Drug Equivalency Tables which can be used as a means of combining different controlled substances to obtain a single offense level. The Drug Equivalency Tables provide that one gram of "Methamphetamine" is equivalent to one kilogram of marijuana while one gram of "Methamphetamine(actual)" is equivalent to 10 kilograms of marijuana.

The Drug Equivalency Tables also contain an explicit reference to "L-methamphetamine" and "Levo-methamphetamine." One gram of "L-methamphetamine" is equivalent to 40 grams of marijuana. Consequently, a defendant must have distributed 250 times as much l-methamphetamine as d-methamphetamine(actual) to receive the same sentence.

At the time of Seyfert's sentencing, no court had addressed the specific question Seyfert raises of whether d,l-methamphetamine is the same as d-methamphetamine for purposes of measuring "Methamphetamine(actual)" under Section 2D1.1, or whether the Government must prove the quantity of d-methamphetamine in a sample of d,l-methamphetamine to sustain its burden regarding the proper quantity. Since that time, the Tenth and Eleventh Circuits have concluded that d,l-methamphetamine should be treated like d-methamphetamine for purposes of Section 2D1.1. *United States v. Decker*, 55 F.3d 1509 (10th Cir.1995); *United States v. Carroll*, 6 F.3d 735 (11th Cir.1993), *cert. denied*, — U.S. —, 114

S.Ct. 1234, 127 L.Ed.2d 577 (1994). The Third Circuit has disagreed with what it perceives to be the Eleventh Circuit's reasoning on the issue. *United States v. Bogusz*, 43 F.3d 82 (3rd Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995).

■ The Sentencing Guidelines explicitly refer to l-methamphetamine and treat it significantly less harshly, and a creative lawyer could have made the leap in reasoning from l-methamphetamine to the l-methamphetamine component of d,l-methamphetamine. However, considering the absence of any reference to d,l-methamphetamine in the Sentencing Guidelines and the total lack of case law on the subject, we find, as a matter of law, that it was not objectively unreasonable for Seyfert's attorney to fail to raise this innovative sentencing issue. *C.f. United States v. Acklen*, 47 F.3d 739, 742–43 (5th Cir.1995) (declining to hold as a matter of law that counsel's performance was not deficient where section 2255 movant alleged that counsel "was ineffective for failing to object at sentencing to the assumption that the methamphetamine involved ... was d-methamphetamine and not l-methamphetamine" since the Sentencing Guidelines explicitly referred to l-methamphetamine and the issue had been addressed in an Eighth Circuit case).

3. If the record had reflected that Seyfert's counsel had actually seen the Government's laboratory report, our inquiry would be complete. We note, however, that the record before us does not so reflect. If, in fact, counsel had not seen the report and had failed to request such a report, we would be prepared to find that his performance was deficient. *See Acklen*, 47 F.3d at 742–43. However, Seyfert's claim of ineffective assistance of counsel would still fail because he cannot demonstrate the level of prejudice required to succeed on this claim.

■ To satisfy the prejudice prong of the *Strickland* test in the context of a noncapital sentencing proceeding, a defendant must establish a reasonable probability that, but for the deficient performance of counsel, his sentence would have been significantly

less harsh. *See Acklen,* 47 F.3d at 742; *United States v. Segler,* 37 F.3d 1131, 1136 (5th Cir.1994). To find that Seyfert had established this prejudice, we would have to find that, had Seyfert's counsel requested the laboratory report, he would have gone beyond what we are today prepared to find reasonable and would have raised this novel sentencing issue regarding the amount of d-methamphetamine found in the d,l–methamphetamine samples. Then, despite the absence of case law on the subject, the sentencing judge would have had to accept counsel's argument. We do not find that such a tenuous likelihood rises to the level of "reasonable probability."

## III.

For the forgoing reasons, we AFFIRM the district court's ruling finding that Seyfert's claim of an error in sentencing is procedurally barred. While we find that the district court's ruling on Seyfert's ineffective assistance of counsel claim was based on clear error, we agree with the result reached by the district court.

The denial of the motion is therefore AFFIRMED.

REAVLEY, Circuit Judge, specially concurring:

Seyfert pleaded guilty and admitted culpability for "9.761 grams of actual/pure methamphetamine in furtherance of and as a foreseeable consequence of the conspiracy." He was therefore sentenced according to § 2D1.1(c)(10) of the 1991 guidelines.

He complains that his counsel was ineffective for failing to urge a lesser sentence for the reason that some of the 9.761 grams of the controlled substance was not actual methamphetamine. He argues that some of the substance was a mixture of D-methamphetamine and L-methamphetamine, and he says an effective counsel would have insisted

that the sentence be based on the content of D-methamphetamine alone.

The Guidelines allow imaginative lawyers and judges room for argument. We can say that "actual methamphetamine" weight is the weight of the methamphetamine itself, whereas a mixture of filler and methamphetamine is described in the table as "methamphetamine." Or we may consider "actual methamphetamine" as the D-methamphetamine, as distinguished from L-methamphetamine. Whatever meaning is chosen, because D and L methamphetamine are both controlled substances I would not read the footnote on page 82 of the 1991 Guidelines to limit the offense level to the D-methamphetamine component of a mixture of the two.

The simple answer to the appeal is therefore to be found in this sentence of that footnote of the Guidelines:

If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.

So I find no issue raised of either the deficiency of the attorney's performance or prejudice to Seyfert.

EMILIO M. GARZA, Circuit Judge, dissenting:

The plurality [1] holds that it was not objectively unreasonable for Seyfert's attorney not to raise the d-methamphetamine issue at sentencing because (1) there was no reference to d,l–methamphetamine in the Sentencing Guidelines, and (2) there was no case law on the subject at the time of Seyfert's sentencing. I would decline to so hold based on the limited record before us. *See United States v. Acklen,* 47 F.3d 739, 742–43 (5th Cir.1995) (declining to hold as a matter of law that counsel's assistance was not deficient and remanding for further proceedings where § 2255 movant alleged that his counsel had failed "to object at sentencing to the assump-

---

1. I refer to Judge Prado's decision as the plurality opinion since both he and Judge Reavley join in affirming the district court's denial of Seyfert's petition for writ of habeas corpus, although for different reasons. Both Judge Prado and I reject the special concurrence's use of the mixture rule to decide Seyfert's claim. I would decline to reach this issue until there is evidence in the record regarding the characteristics of the d,l–methamphetamine which formed the basis for Seyfert's sentence.

tion that the methamphetamine involved in th[e] case was d-methamphetamine and not l-methamphetamine").

I recognize that the sentencing issue underlying the ineffective assistance of counsel claim in *Acklen* (whether the government was required to prove that a sample of seized methamphetamine was d- as opposed to l-methamphetamine) was arguably more obvious than the specific issue presented in Seyfert's appeal (whether the Government must prove the quantity of d-methamphetamine in a sample of d,l-methamphetamine). The issue in *Acklen* had been previously addressed by at least one circuit in *United States v. Koonce*, 884 F.2d 349, 353 (8th Cir.1989), and the Sentencing Guidelines explicitly referred to l-methamphetamine, *see id.* In contrast, no court had addressed the specific question of whether the Government must prove the quantity of d-methamphetamine in a sample of d,l-methamphetamine, a question which depends on whether d,l-methamphetamine is equivalent to d-methamphetamine for purposes of section 2D1.1. However, the two issues are similar; the argument in favor of requiring the Government to prove the quantity of d-methamphetamine in a sample of d,l-methamphetamine, like the argument in favor of requiring the Government to prove whether a sample of methamphetamine is d- or l-methamphetamine, depends on the fact that the Sentencing Guidelines explicitly refer to l-methamphetamine and treat it differently. *See United States v. Bogusz*, 43 F.3d 82, 91 (3rd Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995).

Contrary to the plurality's position, I do not believe it would be "a leap in reasoning" for an attorney to conclude that, based on the fact that l-methamphetamine is treated differently than d-methamphetamine when determining a defendant's sentence under the Guidelines, d,l-methamphetamine *might also* be treated differently than d-methamphet-

amine for sentencing purposes. Moreover, given the drastically different sentencing consequences between d- and l-methamphetamine, it seems an even more objectively reasonable argument for an attorney to make.

The plurality concedes that if Seyfert's counsel had not seen the laboratory report and had failed to request it, they would be prepared to find that his performance was deficient. Instead of remanding to determine what the critical facts were, the plurality assumes that Seyfert's attorney actually received the Government's laboratory report prior to Seyfert's sentencing, and that he reasonably decided not to object to a lack of proof regarding whether the methamphetamine was d- or l-methamphetamine. However, the record does not contain evidence to support this contention.

If the Government did not produce the laboratory report, Seyfert's counsel stood in the same position as counsel in *Acklen*. In *Acklen*, the Government had not produced a laboratory report reflecting the results of testing to determine whether the methamphetamine at issue was d- or l-methamphetamine, and the § 2255 movant faulted his counsel for not objecting to the assumption that the methamphetamine was d-methamphetamine. 47 F.3d at 742.[2] We refused to find that Acklen's counsel was *not* deficient for failing to object at sentencing because *merely reading the commentary to the Sentencing Guidelines* "would have alerted counsel to the potentially significant impact on sentencing that the type of isomers involved," d or l, can have. *Id.* at 743.

Whether Seyfert can demonstrate prejudice under the *Strickland* standard depends on how d,l-methamphetamine should be treated under the Sentencing Guidelines. Therefore, I conclude that a remand is necessary because, unlike both courts of appeals

**2.** If the Government did in fact produce the laboratory report to Seyfert's counsel prior to sentencing, it is unclear whether Seyfert's counsel should be held more or less responsible for not raising the issue. On one hand, the laboratory report answered the question of what form of methamphetamine the samples contained. On the other hand, the laboratory report's indication that the methamphetamine was d,l-methamphet-

amine might have suggested, more clearly than no laboratory report at all, that the samples contained some quantity of l-methamphetamine. Regardless, under the reasoning of *Acklen*, even assuming Seyfert's counsel received the Government's laboratory report before Seyfert's sentencing, I would be unable to hold as a matter of law that Seyfert's counsel's representation was not deficient.

that have addressed the question of how d,l–methamphetamine should be treated under section 2D1.1, we lack a record of expert testimony regarding the characteristics of d,l–methamphetamine. *See United States v. Carroll,* 6 F.3d 735, 745 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994) (relying on the testimony of the Government's expert witness that d,l–methamphetamine is a distinct form of methamphetamine and not a mixture of methamphetamine's stereoisomers, d- and l–methamphetamine). *But see id.* at 749 (Bright, J., dissenting) (characterizing majority's holding as "in contravention of the expert testimony"). Similarly, the Tenth Circuit in *United States v. Decker,* 55 F.3d 1509, 1512 (10th Cir.1995) based its holding on the testimony of the Government's expert which the defendant did not dispute.

In contrast, we lack any record whatsoever regarding the characteristics of the d,l–methamphetamine which formed the basis for Seyfert's sentence. Without such a record, I would decline to resolve either how the Guidelines' mixture rule should apply to this case, as the special concurrence does, or whether Seyfert was prejudiced by his counsel's failure to raise the d-methamphetamine issue.

To this extent, my reasoning is consistent with the Tenth Circuit's approach in *United States v. Cook,* 49 F.3d 663 (10th Cir.1995). In *Cook,* a § 2255 movant contended that his counsel's assistance had been ineffective because counsel had failed to challenge the sentencing court's treatment of d,l–methamphetamine as "pure methamphetamine." *Id.* at 664–65. The district court assumed that the assistance of movant's counsel had been ineffective and rejected his claim on the grounds that he could not show prejudice under *Strickland.* On appeal, the Tenth Circuit decided that:

> to determine whether the district court applied the guidelines correctly, we must first determine whether *Carroll* correctly concluded that DL-methamphetamine is a

third "molecular form" of methamphetamine. To make that determination, we need expert testimony and evidence defining the chemical nature of DL-methamphetamine. Such expert testimony and evidence is entirely absent from the record before us. We therefore remand the case to the district court....

*Id.* at 666. Three months later, the Tenth Circuit reached the issue in *Decker* based on the undisputed testimony of the Government's expert. *See Decker,* 55 F.3d at 1512 ("In the instant case, the undisputed factual record prepares us to venture where *Cook* could not.").

*Acklen* also supports my contention that potential prejudice is sufficient to support a remand of Seyfert's ineffective assistance of counsel claim. 47 F.3d at 744. As in *Acklen,* it is clear that l–methamphetamine was contained in the laboratory sample for which Seyfert was sentenced, and that the district court below, as in *Acklen,* failed to take that into account. In *Acklen* we believed the potential prejudice to the defendant was too great to decide the prejudice issue without a remand to develop a more complete record. *Id.* at 744.

Because the district court's dismissal of Seyfert's § 2255 motion was based on an erroneous finding that the methamphetamine for which Seyfert was convicted was d-methamphetamine, I would vacate the district court's judgment. Further, because the record does not reflect whether Seyfert's attorney knew about the laboratory report nor is there evidence regarding the characteristics of d,l–methamphetamine, I would remand to the district court for further consideration of Seyfert's ineffective assistance of counsel claim.[3]

---

**3.** I concur with the plurality in its holding that the district court properly refused to consider the merits of Seyfert's first claim, in which he contends that the sentencing court erroneously cal-

culated his sentence. Because Seyfert's sentencing claim is not of constitutional dimension and because it could have been raised on direct appeal, Seyfert is barred from asserting it in his

§ 2255 motion. *Acklen,* 47 F.3d at 741, 742 n. 4.