UNITED STATES of America,
Plaintiff–Respondent,

v.

Dwight WATKINS, Defendant–Petitioner.

No. LR–CR–89–71(2).

United States District Court,
E.D. Arkansas,
Western Division.

Jan. 10, 1996.

Michael Johnson, Assistant U.S. Attorney, Little Rock, AR, for U.S.

Drake Mann, Little Rock, AR, for defendant.

### MEMORANDUM OPINION, ORDER AND JUDGMENT

EISELE, District Judge.

Before the Court is petitioner Dwight Watkins' Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255. For the reasons stated below, the relief sought by petitioner will be denied.

### I.

On June 13, 1990, petitioner pled guilty to the crime of conspiring to "manufacture, possess with the intent to distribute, and to distribute in excess of 10 grams of methamphetamine, a Schedule II controlled substance, and cocaine, a Schedule II controlled

substance," [1] in violation of 21 U.S.C. § 846. At petitioner's plea hearing, the government indicated that "the top end level" for which it would hold the defendant accountable was 1,000 grams of methamphetamine.

On August 30, 1990, petitioner appeared before the Court for sentencing. A different Assistant United States Attorney than the one who attended petitioner's plea hearing appeared on behalf of the government, and was prepared to hold petitioner accountable for 6,290 grams of methamphetamine. The Court, however, held the government to its statement made during petitioner's plea hearing, and accordingly limited the amount for which petitioner could be held accountable to 1,000 grams of methamphetamine.

■ Petitioner has raised only one argument in support of his § 2255 motion, namely that his trial counsel was ineffective for failing to challenge the Court's implicit determination that the illegal substance supporting his conviction contained a measurable quantity of D-methamphetamine (Dextro-methamphetamine), as opposed to only L-methamphetamine (Levo-methamphetamine), a drug which, at the time of petitioner's crime, carried with it a far less severe sentencing exposure under the Federal Sentencing Guidelines.

## II.

In *Cheek v. United States*, 858 F.2d 1330 (8th Cir.1988), the Court of Appeals for the Eighth Circuit discussed the showing necessary to establish a claim of ineffective assistance of counsel within the context of a § 2255 motion.

A claim of ineffective assistance of counsel [under § 2255] must be scrutinized under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* in order to prevail on a claim of ineffective assistance of counsel, a convicted defen-

dant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case. The first part of this test is met when the defendant shows that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances." The second part is met when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 1336 (citations omitted); *accord Nazarenus v. United States*, 69 F.3d 1391, 1393–94 (8th Cir.1995). In making this assessment, the Court must apply a "strong presumption" that counsel was reasonably effective, thereby requiring petitioner to show that his trial "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

As discussed above, petitioner was charged with and plead guilty to conspiring to distribute "methamphetamine." The type of methamphetamine was unspecified in the indictment, nor was this ambiguity discussed at sentencing. It appears that those courts that have sought to classify the various types of methamphetamine have adopted at least two (and possibly three) different classification schemes. For example, the Eleventh Circuit has recognized three different types of methamphetamine: "L-methamphetamine, ... an inert form with little or no physiological effects; D-methamphetamine, which has the active physiological effects characteristic of this drug; and DL-methamphetamine, which is composed of 50% L-methamphetamine and 50% D-methamphetamine." *United States v. Carroll,* 6 F.3d 735, 743

---

1. Although 21 U.S.C. § 812 still lists any form of methamphetamine other than injectable liquid as a Schedule III controlled substance, 21 U.S.C. § 811 authorizes the Attorney General, after making certain findings, to transfer substances between schedules. Under the authority of 21 U.S.C. § 871(a) and 28 U.S.C. § 510, the Attorney General could, and did, delegate this authori-

ty to the Director of the Bureau of Narcotics and Dangerous Drugs. By regulation, methamphetamine is a controlled substance under Schedule II unless specially excepted. 21 C.F.R. § 1308.12(d). This transfer procedure was specifically upheld in *United States v. Roark,* 924 F.2d 1426, 1428–29 (8th Cir.1991).

(11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994). The Tenth Circuit has also recognized DL-methamphetamine as a "stand-alone" substance that is more than a just a mixture of D-methamphetamine and L-methamphetamine (the court concluded that D-methamphetamine, L-methamphetamine and DL-methamphetamine are each separate isomeric forms of the methamphetamine molecule). *United States v. Decker,* 55 F.3d 1509, 1512 & n. 6 (10th Cir.1995). The Third Circuit, however, has determined that there are only two distinct types of methamphetamine, namely D-methamphetamine and L-methamphetamine, concluding that DL-methamphetamine is not itself a separate compound, but only a mixture of the other two. *United States v. Bogusz,* 43 F.3d 82, 89 n. 10 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995). The Eighth Circuit has not, as yet, offered its view on how the courts should properly classify methamphetamine (especially DL-methamphetamine) under the Guidelines.[2] Fortunately, the Court is not, under the circumstances of this case, required to resolve this divergence in methamphetamine typology

(nor is the present record sufficiently developed to allow for such an endeavor).

■ Regardless of how one chooses to classify the various types of methamphetamine (especially DL-methamphetamine), it is clear, under the version of the Guidelines in effect at the time of petitioner's crime,[3] that the Guidelines established very different sentencing ranges for both D-methamphetamine and DL-methamphetamine, as opposed to L-methamphetamine. At that time, U.S.S.G. § 2D1.1(a)(3) (October, 1987) directed the sentencing court to calculate the base offense level using the Drug Quantity Table found in § 2D1.1, which established that one gram of methamphetamine (type unspecified) was "equivalent" to 2 grams of cocaine or .4 grams of heroin, while one gram of L-methamphetamine was only "equivalent" to .2 grams of cocaine or .04 grams of heroin. See *United States v. Koonce,* 884 F.2d 349, 352 n. 4 (8th Cir.1989). It thus appears that, in applying the presently applicable Guidelines, there are only two relevant methamphetamine classifications—L-methamphetamine and the rest of the methamphetamine world (namely D-methamphetamine and DL-methamphetamine).[4] Moreover, even if the Court

---

2. In its recent cases, the Eighth Circuit has been concerned only with the distinction between D-methamphetamine and L-methamphetamine. See, *e.g., United States v. Jennings,* 12 F.3d 836 (8th Cir.1994); *United States v. Wessels,* 12 F.3d 746 (8th Cir.1993); *United States v. Koonce,* 884 F.2d 349 (8th Cir.1989). In its pre-Guidelines cases, however, the Eighth Circuit apparently accepted classification of DL-methamphetamine that were consistent with both the Third Circuit's "mixture" · classification, see *United States v. Schrenzel,* 462 F.2d 765, 769 (8th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972), as well as with the Tenth and Eleventh Circuits' "stand alone" classification. See *United States v. Schmaltz,* 562 F.2d 558, 559 (8th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 315 (1977).

3. The conspiracy to which petitioner plead guilty (Count I of the Second Superseding Indictment) was alleged to have been completed on June 23, 1989. As the following discussion will make clear, under the facts of this case the Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 3, requires that the Guidelines in effect on June 23, 1989 be used in assessing the propriety of petitioner's sentence. *See United States v. Reetz,* 18 F.3d 595, 597–98 (8th Cir.1994); *United States v. Bell,* 991 F.2d 1445, 1452 (8th Cir.1993).

4. The Court notes that, as of November 1, 1995, this distinction between methamphetamine types has been eliminated, and L-methamphetamine is now treated the same as D-methamphetamine under the Guidelines. Guidelines Amendment 518. This amendment also takes care of any arguments as to the proper treatment of DL-methamphetamine as well, as now "all forms of methamphetamine are [to be] treated alike." Commentary to Guidelines Amendment 518, *reprinted in* U.S.S.G.App. C at 424 (Nov. 1, 1995).

The Court also notes that under the Guidelines in effect at ·the time of defendant's crime, the Guidelines did not distinguish between methamphetamine and "actual" or ·"pure" methamphetamine. ("Drug quality" distinctions were first incorporated in the Guidelines in Amendment 125, which became effective on November 1, 1989.) Thus, the Court need not consider whether DL-methamphetamine can ever be considered as a "pure" drug. *Compare United States v. Decker, supra,* 55 F.3d at 1512–13; (both D-methamphetamine and DL-methamphetamine are treated the same for drug quality purposes); *United States v. Carroll, supra,* 6 F.3d at 743–47 (same) *with United States v. Bogusz, supra,* 43 F.3d at 90–91 (only D-methamphetamine qualifies as "pure" methamphetamine); *United States v. Carroll, supra,* 6 F.3d at 747–49 (Bright, J., concurring in part and dissenting in part) (same).

were to assume that that version of the Guidelines recognized a distinction between D-methamphetamine and DL-methamphetamine, the ultimate result in this case would be the same. Under U.S.S.G. § 2D1.1, n. * (October, 1987), sentencing courts were instructed that "if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity," and that "[i]f a mixture or compound contains a detectable amount of more than one controlled substance [e.g., DL-methamphetamine, which by definition contains both D-methamphetamine and L-methamphetamine], the most serious controlled substance [e.g., D-methamphetamine] shall determine the categorization of the entire quantity."[5] Further, application note 5 to § 2D1.1 also provided that "a particular controlled substance [e.g., methamphetamine] includes all ... isomers [e.g., D-methamphetamine, DL-methamphetamine and L-methamphetamine]." Thus, the Court concludes that, for purposes of this case, it is not necessary to distinguish the quantity of D-methamphetamine from the quantity of DL-methamphetamine seized from petitioner in determining the propriety of petitioner's sentence. United States v. Decker, supra, 55 F.3d at 1512–13; see United States v. Seyfert, 67 F.3d 544, 549 (5th Cir.1995) (Reavley, J., concurring). Under the Guidelines in effect on June 29, 1989, the proper application of § 2D1.1 established that either 1,000 grams of D-methamphetamine or 1,000 grams of DL-methamphetamine constituted 2,000 grams of cocaine equivalent (or 400 grams of heroin equivalent), and provided for a base offense level of 28, while, by contrast, 1,000 grams of L-methamphetamine constituted 200 grams of cocaine equivalent (or 40 grams of heroin equivalent), and provided for a base offense level of only 20. Accordingly, given petitioner's criminal history category

(Category II), a conviction involving only L-methamphetamine would have resulted in a sentencing range of only 37–46 months, while a conviction involving D-methamphetamine or DL-methamphetamine would have resulted in a range of 87–108 months.

■ To justify imposing a higher range of incarceration for an offense involving D-methamphetamine or DL-methamphetamine, the sentencing court must find, by a preponderance of the evidence, that the methamphetamine in question contained a measurable quantity of D-methamphetamine. See United States v. Jennings, 12 F.3d 836, 838 (8th Cir.1994). The burden of persuasion and production falls upon the government, United States v. Wessels, 12 F.3d 746, 754 (8th Cir.), cert. denied, — U.S. —, 115 S.Ct. 105, 130 L.Ed.2d 53 (1994), and this burden may be carried by either direct or circumstantial evidence. See United States v. Koonce, supra, 884 F.2d at 352–53. The Eleventh Circuit has analyzed this issue as follows:

> In using the term "Methamphetamine," the sentencing guidelines do not mean to include L–Methamphetamine. The guidelines distinguish between "Methamphetamine" and L-methamphetamine by supplying a different sentence for the involvement of each controlled substance. U.S.S.G. § 2D1.1, Drug Equivalency Table. This terminology, however, cannot lead to the inference that the term "methamphetamine" when used in legal proceedings means D-methamphetamine. There must be proof, not a play on words, to justify the added deprivation of liberty that follows the scoring of the drug as D-methamphetamine.

United States v. Patrick, 983 F.2d 206, 209 (11th Cir.1993).

The government has submitted two laboratory reports. The first one is dated July 12,

---

5. Although Guideline Amendment 484 retroactively amended the "mixture rule" of § 2D1.1 to provide that "[m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used," the Court concludes that this amendment has no application in the context of a DL-methamphetamine mixture (or compound), since the expert testimony presented to

the Court during the December 15, 1995 evidentiary hearing indicated that it is not necessary to separate the L-methamphetamine from the DL-methamphetamine before the latter substance can be used by its intended consumer. See United States v. Decker, supra, 55 F.3d at 1512–13; but cf. United States v. Allison, 63 F.3d 350, 353–45 (5th Cir.), cert. denied, — U.S. —, 116 S.Ct. 405, 133 L.Ed.2d 324 (1995).

1989. Various samples were apparently tested, and the results of those tests are identified as "methamphetamine" (several entries), "65% methamphetamine", "50% methamphetamine", "methamphetamine, phenylacetone (P2P)", and "marijuana". No methamphetamine type is specified. The second laboratory report is dated January 11, 1994, and is apparently a new analysis of a lesser amount of the item previously identified as "50% methamphetamine," and it identifies the item as "DL-methamphetamine." Further, at the evidentiary hearing held on December 15, 1995, the government offered the testimony of Norman Kemper, the forensic drug chemist for the Arkansas State Crime Laboratory who analyzed the substance seized from petitioner in 1989 and 1994, who testified that had petitioner's counsel raised the methamphetamine classification issue at sentencing, he would have testified that: (1) in 1989, the testing technology existed to distinguish between L-methamphetamine, D-methamphetamine, and DL-methamphetamine; and (2) that had the substance seized from petitioner been so tested in 1989, that test would have revealed that the substance contained DL-methamphetamine.[6] This latter conclusion was based upon the 1994 test conducted on the substance seized from petitioner, which indicated the existence of DL-methamphetamine. Furthermore, the government produced additional circumstantial evidence—namely a "recipe" found at petitioner's methamphetamine laboratory; the discovery at petitioner's lab of phenylacetone (P2P), a precursor chemical that necessarily yields DL-methamphetamine, and Mr. Kemper's testimony as to the relative practical difficulties in manufacturing pure L-methamphetamine—to support the conclusion that the substance seized from petitioner in 1989 was, in fact, DL-methamphetamine.

The Court has little difficulty concluding that, in light of the fact that *United States v. Koonce, supra,* had been decided by the Eighth Circuit prior to his sentencing, petitioner's trial counsel was ineffective in failing to raise the methamphetamine typing issue at petitioner's sentencing, as his failure to do so resulted in the government not being held to its burden of proof on that issue. *United States v. Acklen,* 47 F.3d 739, 743 (5th Cir. 1995); *cf. United States v. Massey,* 57 F.3d 637, 638 (8th Cir.1995) (failure to raise methamphetamine classification issue at sentencing results in waiver of issue on direct appeal); *but cf. Lambert v. United States,* 908 F.Supp. 356 (W.D.Va.1995). However, in light of the evidence that has since been produced by the government, the Court concludes that petitioner cannot show any prejudice from his trial counsel's failure, since the drugs in question (DL-methamphetamine) did, in fact, contain a measurable quantity of D-methamphetamine. *See United States v. Carper,* 69 F.3d 542 (8th Cir.1995) (No. 95–1762) (unpublished); *United States v. Acklen,* 907 F.Supp. 219 (W.D.La.1995); *United States v. Blankenship,* 906 F.Supp. 461 (C.D.Ill.1995); *cf. United States v. Seyfert, supra,* 67 F.3d at 548–49. Thus, as the Court explained at the end of petitioner's evidentiary hearing, had his trial counsel raised this issue at sentencing, the government would have simply produced evidence (which was then available to it) to prove that the substance seized from petitioner contained a measurable quantity of D-methamphetamine, which fact, under the applicable Guidelines, would have supported the Court's holding petitioner accountable for the entire relevant quantity of DL-methamphetamine. Accordingly, since petitioner cannot meet the prejudice requirement of *Strickland*'s ineffective assistance of counsel test, his § 2255 motion must be denied.

### III.

IT IS THEREFORE ORDERED that petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be, and it is hereby, DENIED.

---

6. Additionally, at the evidentiary hearing the government presented sufficient credible "chain of custody" evidence to establish that the substance tested in 1994 and found to contain DL-methamphetamine was the same substance seized from petitioner in June, 1989.